## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MORRIS SENIOR LIVING, LLC and MORRIS REAL ESTATE HOLDINGS II LLC, | ) | Case No. 12-05364 (Jointly Administered) |
| | ) | |
| | ) | Honorable Jacqueline P. Cox |
| Debtors. | ) | |
| | ) | |

## AGREED FINAL ORDER AUTHORIZING CHAPTER 11 TRUSTEE'S USE OF CASH COLLATERAL AND GRANTING RELATED RELIEF

**THIS MATTER COMING TO BE HEARD UPON** the motion (the "Motion") of Gregg Szilagyi, not individually, but solely as the duly appointed and acting chapter 11 trustee (the "Trustee") of Morris Senior Living, LLC ("Morris Senior Living") and Morris Real Estate Holdings II LLC ("Morris Real Estate" and, together with Morris Senior Living, "Debtors"); the Trustee seeking authority to use cash collateral of Northbrook Bank and Trust Company, as successor to First Chicago Bank and Trust ("Lender"), grant adequate protection, and obtain other relief; due and proper notice of the Motion having been given under the circumstances; the Court having reviewed the legal and factual bases set forth in the Motion; the Trustee and Lender being in agreement; objections to the Motion (collectively, the "Objections") having been filed by Morris Real Estate and Morris Healthcare & Rehabilitation Center, LLC ("Morris Healthcare"); and the Court having found that good cause exists to grant the relief requested in the Motion as set forth herein;

## THE COURT HEREBY FINDS AND CONCLUDES THAT:

A.      On February 14, 2012 (the "Petition Date"), Debtors filed voluntary petitions for relief commencing the above-captioned chapter 11 cases (the "Bankruptcy Cases"). Thereafter, the Court entered an order authorizing the joint administration of the Bankruptcy Cases.

B.      After the Petition Date, Debtors operated their businesses as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

C.      On February 23, 2012, the Court entered that certain Agreed Interim Order Authorizing Use of Cash Collateral (the "Original Cash Collateral Order"), pursuant to which the Court, among other things, authorized Debtors to use cash collateral pursuant to the terms and conditions set forth therein.  The Court thereafter entered minute orders extending the Original Cash Collateral Order through and including June 4, 2012.  A status hearing on the Original Cash Collateral Order is set for June 4, 2012.

D.      On April 2, 2012, the Court entered an order authorizing and directing the U.S. Trustee to appoint a chapter 11 trustee for Debtors.

E.      On April 12, 2012, the Court entered an order approving the appointment of the Trustee as the chapter 11 trustee for Debtors.

F.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

G.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

H.      Lender asserts that prior to the Petition Date, Lender made certain loans and other financial accommodations to Debtors, among others, and in connection therewith entered into certain loan documents, including, without limitation, the following:

1.      a Mortgage dated December 1, 2007, executed and delivered to Lender by Morris Real Estate relating to the real estate and improvements thereon located at and commonly known as 1221 S. Edgewater Drive, Morris, Grundy County, Illinois, and personal property located at or used in connection therewith (collectively, the "Property");

148591.1

2.      an Absolute Assignment of Leases and Rents dated December 1, 2007, executed and delivered to Lender by Morris Real Estate relating to the Property;

3.      a Reimbursement Agreement dated December 1, 2007, executed and delivered to Lender by Morris Real Estate relating to a certain Letter of Credit issued by Lender on behalf of Morris Real Estate;

4.      a Guaranty dated December 1, 2007, executed and delivered to Lender by Morris Senior Living relating to the Reimbursement Agreement;

5.      a Loan and Security Agreement dated November 1, 2007, executed and delivered to Lender by Morris Senior Living;

6.      a Revolving Note dated November 1, 2007, executed and delivered to Lender by Morris Senior Living in the principal amount of up to $500,000.00, as amended (the "Morris Senior Living Note");

7.      a Loan and Security Agreement dated April 7, 2008, executed and delivered to Lender by Morris Healthcare and Rehabilitation Center, LLC ("Morris Healthcare");

8.      a Revolving Note dated April 7, 2008, executed and delivered to Lender by Morris Healthcare in the principal amount of up to $2,500,000.00, as amended (the "Morris Healthcare Note");

9.      a Fifth Replacement Revolving Note dated August 31, 2010, executed and delivered to Lender by Prism Healthcare Management Group, LLC ("Prism") in the principal amount of $775,000.00 (the "Prism Note");

10.     a Sixth Replacement Promissory Note dated January 31, 2011, executed and delivered to Lender by Amboy Real Estate Holdings, LLC ("Amboy Real Estate") in the principal amount of $4,165,000.00 (the "Amboy Real Estate Note");

148591.1

11.     a Promissory Note dated September 1, 2009, executed and delivered to Lender by Amboy Nursing Acquisition & Management, LLC ("Amboy Nursing") in the principal amount of $400,000.00 (the "Amboy Nursing Term Note");

12.     a Third Replacement Revolving Note dated August 31, 2010, executed and delivered to Lender by Amboy Nursing in the principal amount of $1,250,000.00 (the "Amboy Nursing Revolving Note");

13.     a Third Replacement Revolving Note dated August 31, 2010, executed and delivered to Lender by Rockford Healthcare & Rehabilitation Center, LLC ("Rockford") in the principal amount of $1,100,000.00 (the "Rockford Note");

14.     a Third Replacement Revolving Note dated August 31, 2010, executed and delivered to Lender by Dixon Healthcare & Rehabilitation Center, LLC ("Dixon") in the principal amount of $800,000.00 (the "Dixon Note");

15.     a Amended and Restated Cross-Default and Cross-Collateralization Agreement dated August 31, 2010 (the "Cross-Default Agreement"), executed and delivered to Lender by Debtors, among others;

16.     a letter agreement dated July 23, 2010, executed and delivered to Lender by Debtors, among others, as modified on July 28, 2010 (the "Existing Overdraft Letter Agreement"); and

17.     a letter agreement dated November 1, 2011, executed and delivered to Lender by Debtors, among others (the "New Letter Agreement").

The foregoing documents, as well as all other instruments, agreements, and other documents evidencing, securing, or otherwise relating to all loans and other financial accommodations made by Lender to or for the benefit of Debtors, or their affiliates or other insiders, shall collectively be referred to herein as the "Loan Documents".

148591.1

I.       Prior to the Petition Date, Lender alleges that the Debtors and the related borrower parties defaulted on their obligations arising under the Loan Documents.

J.       As a result of Debtors' alleged defaults under the Loan Documents, Lender commenced a foreclosure action against Debtors, among others, in the Circuit Court of the Thirteenth Judicial Circuit, Grundy County, Illinois, captioned *Northbrook Bank and Trust v. Morris Real Estate Holdings II, LLC, et al.*, Case No. 11 CH 377.

K.       Lender alleges that as of December 1, 2011, Debtors were indebted to Lender under the Reimbursement Agreement and the related Guaranty in the approximate amount of $8,164,445.00 and that as of December 1, 2011, Morris Senior Living was indebted to Lender under the Morris Senior Living Note in the approximate amount of $275,373.65, plus overdrafts and/or protective advances.  Additionally, Lender alleges that, as of December 1, 2011, the following amounts, along with protective advances and overdrafts (see below), were due and owing to Lender by Debtors, the other borrower parties, and Borsellino pursuant to the following notes and agreements:  $890,855.91 under the Prism Note; $830,765.22 under the Dixon Note; $1,204,581.84 under the Rockford Note; $1,298,001.30 under the Amboy Nursing Revolving Note; $301,176.10 under the Amboy Nursing Term Note; $4,269,055.22 under the Amboy Real Estate Note; and $2,592,710.12 under the Morris Healthcare Note.  Also, Lender alleges that, as of December 27, 2011, pursuant to the Existing Overdraft Letter Agreement and the New Letter Agreement, $3,997,478.06 in overdraft funds and $819,575.55 in protective advances were due and owing to Lender.  Further, Lender alleges that, pursuant to the Cross-Default Agreement, Lender has liens and security interests against the assets and property of Debtors to secure the indebtedness and other obligations of the other borrower parties.  Lender alleges that, as of December 27, 2011, Debtors, Borsellino, and the other borrower parties were indebted to Lender under the applicable Loan Documents in the approximate amount of $16,204,199.32, plus

interest and fees. Thus, as of December 27, 2011, Lender alleges that Debtors and/or Debtors'
assets and property are indebted to Lender in the approximate amount of $24,644,017.97, plus
accrued interest and all other costs and fees, including reasonable attorneys' fees, expenses,
charges, and other sums due to Lender pursuant to the Loan Documents (the "Existing
Indebtedness").

L.    Lender alleges that the Existing Indebtedness is secured by various liens, pledges,
assignments, mortgages, and security interests described and granted or conveyed in or
evidenced or perfected by one or more of the Loan Documents (the "Liens") in, to, and against
all of Debtors' assets and property, together with the proceeds thereof, all as more particularly
described in and evidenced by the Loan Documents, and all revenues generated by the lease,
sale, or use thereof (the "Collateral"), some of which constitutes "cash collateral" within the
meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

M.    Lender alleges that, as of the Petition Date, the Liens are first priority liens and
security interests as to all of the Collateral.

N.    Lender contends that: (a) the Existing Indebtedness owing by Debtors to Lender
pursuant to the Loan Documents constitutes the legal, valid, binding and enforceable obligation
of Debtors; (b) the Loan Documents are valid and enforceable against Debtors in accordance
with their terms; and (c) the Liens of Lender in, to, and against all of the Collateral are valid,
enforceable, properly perfected, and first priority liens and security interests.

O.    Lender contends that Debtors have no valid objection, offset, demand or
counterclaim of any kind or nature to such obligations, which, together with any amounts
previously paid to Lender on account thereof, are not, and will not be, subject to avoidance,
recovery, reduction, disallowance, disgorgement, other non-consensual treatment or
subordination pursuant to the Bankruptcy Code or other applicable non-bankruptcy law.

148591.1

P.   Lender is entitled to adequate protection of its interests in the prepetition Collateral and the Cash Collateral, and the Trustee may not use the Cash Collateral for any purpose without Lender's consent or upon order of the Court.

Q.   Entry of this Order will provide the Trustee with the ability to operate Debtors and administer Debtors' estates during the term of this Order.

R.   The Trustee has requested entry of this Order as a final Order pursuant to Bankruptcy Rule 4001.

S.   The Trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code sufficient to finance the operations of Debtors' business and administration of Debtors' estates.  Except as provided below, the Trustee is unable to obtain credit allowable under sections 364(c)(1), (c)(2), or (c)(3) of the Bankruptcy Code on terms more favorable than those offered by Lender.

T.   The terms of this Order have been negotiated in good faith and at arms' length.

U.   Under the circumstances of these Bankruptcy Cases, the terms and conditions of this Order are a fair and reasonable response to the Trustee's request for Lender's consent to the use of Cash Collateral, and the entry of this Order is in the best interests of Debtors' estates and their creditors.

V.   The notice provided by the Trustee of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001 and 9014 and sections 102(1), 363, and 364 of the Bankruptcy Code and were otherwise sufficient and appropriate under the circumstances.

W.   Good cause exists for approval of this Order.

IT IS HEREBY ORDERED THAT:

148591.1

1.    <u>Motion Granted</u>.  The relief requested in the Motion is granted as set forth herein. To the extent that the Objections have not been withdrawn or resolved as set forth herein, the Objections are overruled and denied.

2.    <u>Incorporation of Findings and Conclusions</u>.  The paragraphs contained in the foregoing preamble and findings and conclusions, if any, are incorporated by reference in this Order, and the Trustee and the Lender consent and stipulate to the facts contained in such preamble and findings and to the entry of this Order.

3.    <u>Term of Effectiveness of this Order</u>.  This Order shall become effective immediately upon the entry hereof.  Unless Lender otherwise agrees in writing, the termination of this Order and the Trustee's right to use the Cash Collateral pursuant hereto shall terminate on the earlier of the following dates (the "<u>Termination Date</u>"): (a) the date an order is entered by the Court granting a motion to convert one or both of the Bankruptcy Cases to a case under chapter 7 of the Bankruptcy Code and a chapter 7 trustee is appointed for Debtors' estates other than the Trustee; (b) the date an order is entered by the Court granting Lender, or any other creditor, relief from the automatic stay in order to initiate or continue foreclosure, seizure, repossession, or other proceeding against any or all of the Collateral; (c) the date an order is entered by the Court granting a motion to dismiss one or both of the Bankruptcy Cases; (d) the date on which this Order is reversed, revoked, modified, amended, stayed, rescinded, or supplemented; (e) the date on which either the Trustee, Debtors, or any other representative of Debtors or their estates shall grant any security interest in or lien on the assets or property of Debtors or their estates senior to Lender's Liens on the assets and property of Debtors, other than the Postpetition Liens (as defined herein) created in favor of Lender pursuant to this Order; (f) subject to and after the close of the Challenge Period (as defined herein), the date on which the Trustee or any other any party files any objection in the Bankruptcy Cases to the validity, amount, allocability, unavoidability

perfection, or priority of Lender's pre-petition Liens as set forth herein; (g) the date on which the

Court confirms a plan of reorganization that impairs (as defined in section 1124 of the

Bankruptcy Code) Lender's rights under the Loan Documents; (h) the date upon which the

Trustee and Lender agree in writing to such termination; and (i) the date five (5) business days

after receipt of notice from Lender by the Trustee, the U.S. Trustee, and any committee

appointed in the Bankruptcy Cases of Lender's intent to terminate its consent to use of Cash

Collateral pursuant to this Order on account of the occurrence of any Event of Default (as

defined herein), unless such Event of Default is expressly and specifically waived in writing by

Lender or has been cured prior to the expiration of such five (5) business day notice period.  In

the event of any disagreement or dispute between the Trustee and Lender as to whether an Event

of Default has occurred hereunder, the Trustee may seek authority on an expedited basis to

continue to use the Cash Collateral on the terms provided in this Order until such time as the

Court resolves such disagreement or dispute.  Upon the Termination Date, and subject to the

Carve-Out (hereafter defined), Lender objects to any subsequent use of the Cash Collateral, and

the Trustee's authorization to use the Cash Collateral for any purpose is terminated.  Upon the

Termination Date, and subject to the Carve-Out, the Trustee shall immediately account for and

turn over to Lender all the Cash Collateral then possessed or thereafter acquired by the Trustee or

Debtors.

      4.    <u>Use of Cash Collateral/Budget</u>.  Pursuant to section 363 of the Bankruptcy Code,

the Trustee is authorized to use the Cash Collateral only as provided in this Order.

      a.    The Trustee is authorized to use Cash Collateral only (i) to pay actual,

ordinary and necessary operating expenses of Debtors and their estates for the purposes

and up to the Monthly Amounts set forth in the budget attached hereto as <u>Exhibit A</u> (the

"Budget"), and (ii) to pay any other expenses approved by the prior written consent of

148591.1

Lender, in its sole and absolute discretion.  "Monthly Amounts" means the aggregate total amounts designated to be paid or accrued by the Trustee on behalf of Debtors and their estates during a calendar month for a specific line item in the Budget or to a payee as designated in this Order.

b.      To the extent that the Trustee seeks to modify the Budget, beginning on the 15th day of the last month set forth in the Budget, and continuing on the 15th day of the last month set forth in any future applicable Monthly Budget (hereafter defined), the Trustee shall deliver a proposed monthly budget (the "Monthly Budget") to Lender that sets forth all anticipated monthly postpetition revenues, expenses and reserves for and unanticipated expenses that will be incurred on behalf of Debtors and their estates during the next successive month(s). Each new Monthly Budget shall be delivered to Lender on or before the 15th day of the last month for which the then current Budget or Monthly Budget (whichever is applicable) applies.  After receipt of each Monthly Budget, Lender shall have five (5) business days to approve or object to the Monthly Budget.  Any such objection by Lender shall be in writing and shall specify the particular item(s) and amount(s) objected to and reasons for the objection.  If Lender objects to a Monthly Budget or item or amount therein, unless the Trustee and Lender agree otherwise, the Trustee may not make any Cash Collateral expenditure objected to by Lender unless or until the Trustee obtains the Court's authorization to make such expenditure. The Trustee may seek authority to make such expenditure on an expedited basis.

c.      The use of Cash Collateral to pay any expense in excess of the approved Monthly Amounts shall require the prior written approval of Lender, or further order of the Court with appropriate notice to Lender; provided, however, that the Trustee may use Cash Collateral to pay amounts in any category in excess of the budgeted amounts by up

148591.1

to but not greater than five percent (5%) such that the total amount by which the Budget or Monthly Budget is exceeded for a calendar month will not exceed, in the aggregate, five percent (5%) over the budgeted amount.

5.    <u>Insiders</u>.  Except as may be provided in the Budget or as otherwise ordered by the Court, no Cash Collateral shall be used in payment of any kind whatsoever to Debtors, Lewis Borsellino ("<u>Borsellino</u>"), Kimberly Westerkamp ("<u>Westerkamp</u>"), or the relatives, representatives, affiliates, or insiders of Debtors, Borsellino or Westerkamp (collectively, the "<u>Insiders</u>").   Notwithstanding the foregoing, nothing in this Order shall prevent Morris Healthcare from seeking entry of an order(s), after notice and a hearing:  (a) declaring or establishing that it is the owner of that certain certification (the "<u>SLF Certification</u>") issued under the Supportive Living Program administered by the Illinois Department of Healthcare and Family Services to operate a supportive living facility at the Property; (b) granting a request for allowance of an administrative expense against the Debtors' estates pursuant to section 503(b)(1) of the Bankruptcy Code for the Debtors' purported use of the SLF Certification to operate the supportive living facility at the Property; and/or (c) requiring payment of any allowed administrative expense relating to the SLF Certification as part of the Carve-Out under this Order or as otherwise directed by the Court.  The Trustee and Lender shall have the right to contest or object to any and all such relief sought by Morris Healthcare relating to the SLF Certification, as the Trustee and Lender dispute that Morris Healthcare owns or has any interest in the SLF Certification.

6.    ~~Capital Improvements.  The Trustee shall not make any capital improvement to~~ Debtors' assets or property absent prior written consent of Lender or further order of the Court.

7.    <u>No Third Party Liens</u>.  As set forth in Paragraph No. 3(e) above, this Order shall terminate if the Trustee grants any entity, other than Lender, a security interest in or lien on any

of Debtors' assets, including Collateral, the Cash Collateral, and all other assets subject to the Liens held by Lender, including the Postpetition Liens provided for herein, without the prior express consent of Lender.

8.    <u>Postpetition Liens</u>.  Notwithstanding anything in section 552 of the Bankruptcy Code to the contrary, and in addition to its Liens under the existing Loan Documents with respect to the Collateral (which are fully reserved, and continue in full force and effect), subject only to the Carve-Out, Lender shall have and is hereby granted as and for, among other things, adequate protection (effective and continuing without the necessity of the execution, filing, and/or recordation of mortgages, deeds of trust, security agreements, deposit account control agreements, pledge agreements, financing statements, or otherwise), valid, binding, enforceable, and perfected continuing first-priority liens and security interests (the "<u>Postpetition Liens</u>") in and on any and all of Debtors' now owned or after acquired real and personal property, tangible and intangible, equipment, accounts, accounts receivable, general intangibles, rents, income, profits, and other rights to payment of any type, and all proceeds of the foregoing, wherever located, to the same extent, validity and priority held by Lender on the Petition Date, whether or not constituting pre-petition or postpetition collateral; provided, however, that the Postpetition Liens do not encumber any avoidance actions pursuant to sections 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and any proceeds therefrom (collectively, the "<u>Avoidance Actions</u>").  The Postpetition Liens granted to Lender will be evidenced by the existing Loan Documents and this Order.  The Postpetition Liens will secure (a) repayment of all amounts owed under the Loan Documents and the Existing Indebtedness, but will be limited in amount to the diminution in the value of the Collateral, including Cash Collateral, securing the Existing Indebtedness as of the Petition Date, and (b) repayment of all Postpetition Advances made by

148591.1

Lender to the Trustee, on behalf of Debtors' and their estates, pursuant to Paragraph No. 19 below.

9.    <u>Superpriority Administrative Expense Claim</u>.  Subject only to the Carve-Out, Lender shall have an allowed superpriority administrative expense claim pursuant to sections 364(b), 503(b), and 507(b) of the Bankruptcy Code senior to all other administrative expenses in the Bankruptcy Cases to the extent (a) that Lender's interest in the Cash Collateral is not adequately protected by the terms of this Order, and (b) Lender makes Postpetition Advances to the Trustee pursuant to Paragraph No. 19 below (collectively, the "<u>Super Priority Claim</u>").

10.    <u>Administrative Expenses</u>.  Except for the Carve-Out, the Trustee hereby waives any right or entitlement to have the costs or expenses of administration or of preserving or disposing of the Collateral of the kind specified in section 506(c) of the Bankruptcy Code, which have been or may be incurred in the Bankruptcy Cases, any proceedings following conversion of the Bankruptcy Cases pursuant to section 1112 of the Bankruptcy Code, or in any other proceeding, to be assessed against Lender, the Collateral, or the Cash Collateral.

11.    <u>Security Interest</u>.  This Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of all of the Liens upon the property of Debtors and their estates granted to Lender as set forth herein, without the necessity of filing, recording, or serving any financing statements or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to Lender herein and the Loan Documents. If Lender shall, in its discretion, elect for any reason to file any such security interests and liens, the Trustee is hereby authorized and directed to execute, or cause to be executed, on behalf of Debtors, all such financing statements or other documents upon Lender's request, and the filing, recording, or service thereof (as the case may be) of such financing statement or similar documents shall be

deemed to have been made at the time of and on the Petition Date.  Lender may, in its discretion,

file a copy of this Order in any filing or recording office in any county or other jurisdiction in

which Debtors have real or personal property and, in such event, the subject filing or recording

officer is authorized and directed to file or record such certified copy of this Order.

12.     Financial Reporting.  As additional adequate protection, the Trustee shall provide

to Lender, no later than the last calendar day of each month (a) a report of cash collections,

outstanding accounts receivable (aged by payor source in a format that is consistent from month-

to-month), accounts payable (by vendor that identifies the number of days each payable has been

outstanding) and expenditures as of the end of the previous month; (b) an income and expense

statement; and (c) copies of any state surveys or inspections of Morris Senior Living.   The

Trustee shall provide any other financial reporting information reasonably requested by Lender

within five (5) business days of such request, including, without limitation, any such financial

reporting requirements contained in the Loan Documents.

13.     Accounting, Information and Access.  As additional adequate protection, on the

7th day of each calendar month after entry of this Order, the Trustee shall provide to Lender an

accounting which includes the following: (a) the balance of the Cash Collateral in Debtors'

accounts at the end of the prior calendar month; (b) all withdrawals of Cash Collateral from

Debtors' accounts during the prior calendar month, and each of the payments funded with those

withdrawals; (c) all deposits of Cash Collateral into Debtors' accounts during the prior calendar

month (with a confirmation that all Cash Collateral received by the Trustee and/or Debtors

during such calendar month was deposited in Debtors' accounts in accordance with this Order);

and (d) the actual amounts collected and paid during the prior calendar month for each line item

in the Budget.  In addition, the Trustee shall promptly provide to Lender (and in no event later

than 48 hours of such request) all other financial information reasonably requested by Lender or

148591.1

its attorneys or other representatives, including, but not limited to, balance sheets, income statements, tax returns and information regarding the Debtors' assets, liabilities, operations, and financial affairs. Further, without limiting the rights of access and information afforded Lender under the Loan Documents, upon 48 hours advance notice from Lender, the Trustee shall provide representatives, agents, third-party contractors (including appraisers) and/or employees of Lender prompt and reasonable access to Debtors' premises and records and shall otherwise cooperate, consult with, and provide to such persons all such non-privileged information and information not subject to a binding confidentiality agreement as they may reasonably request. The Trustee shall also provide to Lender, at the time filed or provided, all statements, schedules or financial reports which the Trustee files in the Bankruptcy Cases or provides to the United States Trustee in accordance with applicable Bankruptcy Rules, local bankruptcy rules, or guidelines of the United States Trustee. Finally, on the first business day of each calendar week during the term of this Order, the Trustee shall provide to Lender census information by payor source and that adds up to the total number of residents at the facility; copies of documents evidencing all receipts, withdrawals, transfers, or other dispositions of Cash Collateral during the preceding calendar week, including, without limitation, checks, wire transfer advice/confirmations, ACH confirmations, deposit statements or receipts, and other documents; as well as a listing of anticipated expenditures for the upcoming week, including the payee, purpose, and amount of the anticipated expenditures.

14.   <u>Adequate Protection Payments</u>. Lender reserves the right to request that the Court enter an order, after notice and a hearing, granting Lender additional adequate protection (beyond the adequate protection provided for in this Order), including adequate protection payments, pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code.

148591.1

15. <u>Insurance</u>. The Trustee shall, as permitted by the applicable Budget and/or Monthly Budget, (a) provide general comprehensive, hazard, and liability insurance coverage for the Collateral as required by the Loan Documents, naming Lender as loss payee, (b) promptly make all premium payments required to maintain said insurance, and (c) authorize and instruct all insurance companies providing such insurance to notify Lender of any failure to make any premium payment or other default under any such insurance policies. The Trustee shall provide to Lender copies of insurance binder(s), policy(ies) and other written evidence of said insurance coverage.

16. <u>Commingling Prohibition/Deposit in Approved Accounts</u>. The Trustee shall not commingle the Cash Collateral with monies from any other source, and shall deposit and maintain all Cash Collateral solely in bank accounts at or to be established at Lender for such purpose; provided, however, that the Trustee shall be entitled to maintain Debtors' existing payroll account at First Midwest Bank and deposit Cash Collateral in such account to the extent necessary to fund payroll to Debtors' employees.

17. THIS PARAGRAPH IS INTENTIONALLY BLANK.

18. <u>Taxes</u>. The Trustee shall remain current on all of Debtors' postpetition tax obligations arising out of the ownership and/or operation of the Debtors' businesses, and shall, if allowed in any Budget or Monthly Budget, pay outstanding pre-petition real estate taxes assessed against the Property. The Trustee shall tender evidence of payment of all such tax obligations to Lender upon the payment thereof. In the event that the Trustee fails to make any required tax payment as set forth herein, Lender may advance, in its sole and absolute discretion, such funds in order to make any such required tax payment, and such advances shall constitute and shall be construed as a Postpetition Advance.

148591.1

19. <u>Postpetition Advances</u>. Upon entry of this Order, the Trustee is authorized, on behalf of Debtors and their estates, to obtain credit from and incur debt owing to Lender, including, without limitation, paying all interest, fees, costs, expenses (including reasonable attorneys' fees) and other obligations related thereto, pursuant to section 364(d) of the Bankruptcy Code, as is reasonably necessary to enable the Trustee to make payments on behalf of Debtors and their estates pursuant to the Budget or Monthly Budget and as otherwise authorized under this Order (collectively, the "<u>Postpetition Advances</u>"). Lender may make (or not make) Postpetition Advances to the Trustee in its sole and absolute discretion. The Postpetition Advances shall consist of protective advances made by Lender pursuant to the terms and conditions of the Loan Documents. The Postpetition Advances shall be secured by the Postpetition Liens as set forth in Paragraph No. 8 above, and subject only to the Carve-Out, the Postpetition Liens securing the Postpetition Advances shall be senior to and have priority over all other liens, claims and encumbrances against the Collateral, the Cash Collateral, and all other assets and property of Debtors' estates, including, without limitation, the Liens held by Lender securing the Existing Indebtedness; provided, however, as stated, the Postpetition Liens do not encumber any Avoidance Actions. The Postpetition Advances shall also be secured by the Super Priority Claim as set forth in Paragraph No. 9 above, and subject only to the Carve-Out, the Super Priority Claim securing the Postpetition Advances shall be senior to and have priority over all other administrative expenses in the Bankruptcy Cases.

20. <u>Monthly Repayments on Postpetition Advances</u>. To the extent that Lender makes Postpetition Advances pursuant to the terms set forth in Paragraph 19 above, the Trustee shall make monthly payments to Lender to repay such Postpetition Advances, plus accrued interest thereon, whether in whole or in part, in an amount equal to: (a) 50% of the amount of Cash Collateral, if any, in excess of 125% of the Cash Collateral required to satisfy the expenses for

the current month under the Budget or Monthly Budget then in place; or (b) such other amount as may be agreed to from time to time by the Trustee and Lender. Such monthly payments shall be made on or before the fifth (5th) business day of each month.

21.    <u>Carve-Out</u>. Notwithstanding anything to the contrary in this Order, the Existing Indebtedness, the Liens, and the Postpetition Liens and the Super Priority Claim granted in favor of Lender pursuant to Paragraph Nos. 8, 9, and 19 above, shall all be subject and subordinate to the payment of the following (collectively, the "<u>Carve-Out</u>") (a) compensation and reimbursement of expenses of the Trustee and such professional persons retained by the Trustee as authorized by order of the Court pursuant to section 327 of the Bankruptcy Code (collectively, "<u>Professional Persons</u>") that are accrued but unpaid as of the Termination Date that are allowed by final order of the Court under sections 503(b)(2), 326, 328, 330, and/or 331 of the Bankruptcy Code; (b) fees required to be paid to the Clerk of the Court; (c) quarterly fees required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); (d) any other actual, necessary and allowable accrued but unpaid administrative expenses incurred by the Trustee or Debtors' estates on or prior to the Termination Date that are (i) expressly provided for in the then-applicable (or prior) Budget or Monthly Budget(s), or (ii) not expressly provided for in the then-applicable (or prior) Budget or Monthly Budget(s), but are of the same type and amount of expense provided for in such budget(s) and were not included therein solely because the invoice or bill evidencing such accrued but unpaid expenses would not have been due and payable until a future budget period; and (e) up to an additional $50,000 of (i) compensation and reimbursement of expenses of the Trustee and Professional Persons that are allowed by final order of the Court under sections 503(b)(2), 326, 328, 330, and/or 331 of the Bankruptcy Code that accrue after the Termination Date necessary to enable the Trustee to wind down the affairs of Debtors' estates after the Termination Date and (ii) other actual, necessary administrative expenses incurred by

148591.1

the Trustee after the Termination Date that are incidental to the Trustee's winding down of the

affairs of Debtors' estates.  Notwithstanding anything to the contrary in this Order, no proceeds

of the Collateral, the Cash Collateral, or the Postpetition Advances may be used to pay the fees

and expenses of any Professional Persons, or any other costs, incurred in connection with (a)

commencing or continuing any claims, causes of action, or contested matters against Lender,

including discovery proceedings subsequent to the commencement of any such claims, causes of

action, or contested matters; or (b) any other purpose prohibited by this Order.

22.    Default.  An Event of Default shall be deemed to have occurred under this Order,

upon the occurrence of any one or more of the following:

a.    Upon Lender's provision of written notice of the Trustee's failure to

perform in accordance with any of the terms and conditions of this Order, unless such

failure to perform is cured no later than five (5) business days after receipt of such written

notice;

b.    The termination, expiration, lapsing or reduction of insurance coverage on

the Collateral;

c.    Payment of any amounts of Cash Collateral to any Insider that is not set

forth in the Budget or Monthly Budget; and

d.    Payment of any amount not contemplated by the Budget, Monthly

Amount, or this Order, without prior Lender consent or Court approval.

23.    Binding on Successors and Assigns.  The provisions of this Order shall inure to

the benefit of, and shall be binding upon, the Trustee, Debtors and Lender and their respective

successors and assigns, including, but not limited to, any other trustee or representative now or

hereafter appointed as a legal representative of Debtors, or their estates, in the Bankruptcy Cases,

148591.1

and shall be binding on all creditors and other parties in interest that received notice of the

Motion.

24.    <u>Survival of Provisions</u>.   The provisions of this Order and any actions taken

pursuant hereto shall survive entry of any order dismissing the Bankruptcy Cases, converting the

Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code, or which may be entered

confirming or consummating any plan of reorganization of Debtors' estates.

25.    <u>Challenge Period</u>.   No later than forty five (45) days from the entry of this Order

(the "<u>Challenge Period</u>"), (i) the Trustee and/or (ii) any other party in interest that seeks and

obtains entry of an order of the Court, after notice and a hearing, granting such party leave to do

so, by means of an adversary proceeding, object to, challenge, or seek to avoid the amount,

validity, or enforceability of the Loan Documents, the Existing Indebtedness, or the Liens.  If no

such action, objection or other challenge is commenced through an adversary proceeding by the

Trustee within the Challenge Period, then the Existing Indebtedness owing to Lender under the

Loan Documents will be deemed and adjudicated by this Order finally and indefeasibly as valid

and enforceable, and the liens and security interests of Lender in the Collateral will be deemed

and adjudicated finally as valid, enforceable, unavoidable, and perfected, pursuant to and

consistent with the allegations and contentions of Lender set forth in Paragraphs H – O of this

Order.  No other party in interest may object to, challenge, or seek to avoid the amount, validity,

or enforceability of the Loan Documents, the Existing Indebtedness, or Lender's liens and

security interests in the Collateral, as the "Challenge Period" as defined and set forth in the

Original Cash Collateral Order applicable to such parties in interest previously expired without

any party in interest having filed an objection or challenge.  Notwithstanding anything to the

contrary herein, under no circumstances, other than to enforce the Carve-Out, may the Trustee or

any other party in interest (other than any chapter 7 trustee appointed for the Debtors, upon any

148591.1

conversion of the Bankruptcy Cases to chapter 7 of the Bankruptcy Code, but only if such chapter 7 trustee seeks and obtains entry of an order of the Court, after notice and a hearing, granting such trustee leave to do so) object to, challenge, or seek to avoid the amount, validity, or enforceability of the Postpetition Advances, the Postpetition Liens or Super Priority Claim granted to Lender hereunder, or the Loan Documents to the extent that such documents evidence, secure or otherwise relate to the Postpetition Advances. By agreeing to the terms of this Order, Lender does not, except as provided in this Order, waive any of its rights and remedies under the Loan Documents or applicable law, including those rights set forth in the Bankruptcy Code. Lender shall have the right to object to (i) any request by a party in interest for leave to object to, challenge, or seek to avoid the amount, validity, or enforceability of the Loan Documents, the Existing Indebtedness, or Lender's liens and security interests in the Collateral, or (ii) any request by any chapter 7 trustee for leave to object to, challenge, or seek to avoid the amount, validity, or enforceability of the Postpetition Advances, the Postpetition Liens or Super Priority Claim granted to Lender hereunder, or the Loan Documents to the extent that such documents evidence, secure or otherwise relate to the Postpetition Advances.

26.    <u>Reservation of Rights</u>.  Nothing in this Order will be deemed or construed as an admission or waiver by Lender as to adequate protection, or any other issue in the Bankruptcy Cases, and this Order will not constitute consent by Lender to the use of its Cash Collateral other than for the limited purpose and during the limited period expressly provided herein. In addition, nothing contained in this Order will prejudice the rights of Lender to: (i) withdraw its consent to the Trustee's use of Cash Collateral and seek to obtain the Court's order prohibiting use of Cash Collateral after the Termination Date; (ii) seek relief from the automatic stay of section 362(a) of the Bankruptcy Code; (iii) oppose the sale or disposition of any asset pursuant to section 363 of the Bankruptcy Code; (iv) oppose confirmation of any plan of reorganization filed by the

148591.1

Trustee, either Debtor, or any other party in interest; (v) seek a dismissal of the Bankruptcy

Cases pursuant to section 1112 of the Bankruptcy Code; (vi) seek allowance of an administrative

claim or additional adequate protection in connection with the use of Lender's Cash Collateral;

(vii) seek to convert the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code

pursuant to section 1112 of the Bankruptcy Code; or (viii) seek any other relief that Lender may

deem necessary and appropriate under the circumstances.  Except as expressly set forth herein,

all of Lenders' rights and remedies under the Loan Documents, and otherwise, are preserved.

     27.    Notice.  To the extent notice is required under the terms of this Order, notice shall

be provided via electronic mail and by regular first class U.S. mail, postage paid, at the following

addresses:

> If to Trustee:  Gregg Szilagyi
> c/o Tailwind Services LLC
> 542 South Dearborn Street
> Suite 1060
> Chicago, Illinois 60605
> Email: gs@tailserv.com
>
> With a copy to:
>
> Brad A. Berish, Esq.
> Adelman & Gettleman, Ltd.
> 53 W. Jackson Blvd.
> Suite 1050
> Chicago, Illinois 60604
> Email:  bberish@ag-ltd.com
>
> If to Lender:  Jerry L. Switzer, Jr., Esq.
> Polsinelli Shughart PC
> 161 N. Clark Street, Suite 4200
> Chicago, Illinois 60601
> Email: jswitzer@polsinelli.com

     28.    Original Cash Collateral Order.  The Original Cash Collateral Order be and is

hereby amended and replaced in its entirety by the terms of this Order, and to the extent of any

148591.1

conflicts between the terms of this Order and the Original Cash Collateral Order, then the terms
of this Order shall control.

ENTER:

_____   6/4/12
United States Bankruptcy Judge


AGREED AS TO FORM AND SUBSTANCE:

Gregg Szilagyi, not individually, but solely
as chapter 11 trustee of Morris Senior
Living, LLC and Morris Real Estate
Holdings II LLC                              Northbrook Bank and Trust Company


By:   s/s Brad A. Berish_____             By:   /s/ Jerry L. Switzer_____
     One of his attorneys                         One of its attorneys

Brad A. Berish                               Jerry L. Switzer, Jr.
Nathan Q. Rugg                               Anthony C. Porcelli
Adelman & Gettleman, Ltd.                    Polsinelli Shughart PC
53 W. Jackson Blvd., Suite 1050              161 N. Clark Street, Suite 4200
Chicago, Illinois  60604                     Chicago, Illinois  60601
PH:  (312) 435-1050                          PH:  (312) 819-1900
FAX:  (312) 435-1059                         FAX:  (312) 819-1910
Email:  bberish@ag-ltd.com                   Email:  jswitzer@polsinelli.com
        nrugg@ag-ltd.com                             aporcelli@polsinelli.com

148591.1

## Morris SLF Budget

| | MAY '12 | | |
|---|---:|---|---|
| **BEGINNING BALANCE** | $  63,016 | | |
| | | | |
| **REVENUE** | | | |
| May Rent Receipts deposited In April | -38537 | | |
| Covered Services-Private (Resident Paid) | 108,500 | | |
| Covered Services-Tenant (Resident Paid) | 22,688 | | |
| Covered Services-Medicaid (State Paid) | 0 | $  46,063 | (66% of Total) May Medicaid AR |
| Days Out Service Loss | 0 | $  (2,100) | 1 Non Paid Medicaid Bedhold |
| Food Stamps | 2,500 | | |
| Employee/Guest Meals | 50 | | |
| Telephone and Cable | 2,030 | | |
| **ANTICIPATED MAY CASH RECEIPTS** | 97,231 | Excludes May Medicaid AR or prior month payments | |
| **CASH AVAILABLE** | 160,247 | Beginning Balance + May Receipts | |
| **OPERATING EXPENSES** | | | |
| | | | |
| **SALARIES** | | | |
| Admin Salaries (includes PR Tax) | 9,956 | | |
| Food Service Salaries | 13,062 | | |
| Nursing Salaries | 20,322 | | |
| Activities Salaries | 1,613 | | |
| Housekeeping Salaries | 4,814 | | |
| Maintenance Salaries | 2,571 | | |
| Marketing Salaries | 2,276 | | |
| **TOTAL SALARIES + PR TAX.** | 54,614 | | |
| **DEPARTMENTAL EXPENSES** | | | |
| **ADMINISTRATION** | | | |
| Professional Fees-Accounting | 0 | | |
| Workers Comp | 1,507 | | |
| 401k Expense | 0 | | |
| Health and Dental Insurance | 1,326 | | |
| Payroll Fee | 250 | | |
| Time Clock | 38 | | |
| Employee Testing and Fingerprinting | 260 | | |
| Training/Education/Meetings | 100 | | |
| Mileage /Parking/Car Rental & Gas | 100 | | |
| Dues & Subscriptions | 224 | | |
| Employee Appreciation | 0 | | |
| Office Supplies | 300 | | |
| Printing | 500 | | |
| Copier and Copier Related Costs | 450 | | |
| Postage & Related/Freight/Courier | 40 | | |
| Cable TV | 1,096 | | |
| Telephone | 225 | | |
| Leased Equipment | 200 | | |
| Cellphone/Pager | 0 | | |
| IT Support & Fees | 1,670 | | |
| Accounting/Audit | 3,000 | | |
| Legal | 0 | | |
| Bank Service Charges | 200 | | |
| Fees, Permits & Licenses | 27 | | |
| Bad Debt - Private and Medicaid | 0 | | |
| **TOTAL ADMINISTRATION** | 11,514 | | |
| | | | |
| **FOOD SERVICE** | | | |
| Raw Food | 13,000 | | |
| Kitchen Warranties | 102 | | |
| Consulting Fee | 2,632 | | |
| **TOTAL FOOD SERVICE** | 15,734 | | |

EXHIBIT A

**NURSING**

| | |
|---|---:|
| Drugs & Clinical Supplies | 500 |
| **TOTAL NURSING** | **500** |

**ACTIVITIES**

| | |
|---|---:|
| Activity Supplies | 100 |
| Pet Care | 27 |
| Entertainment | 100 |
| Vehicle Cost (Lease etc.) | 50 |
| **TOTAL ACTIVITIES** | **277** |

**HOUSEKEEPING**

| | |
|---|---:|
| Housekeeping Supplies | 650 |
| **TOTAL HOUSEKEEPING** | **650** |

**MAINTENANCE/SECURITY**

| | |
|---|---:|
| Maintenance Supplies | 370 |
| Disposal Services | 226 |
| Repair & Maintenance | 600 |
| Contracted Services - Elevator | 176 |
| Contracted Services - Lndscpng/Snow | 2,526 |
| Contracted Services - Window Cleaning | 0 |
| Contracted Services - Extermination | 135 |
| Contracted Services - Security | 67 |
| Fire Inspection & Testing | 406 |
| Painting and Decorating | 200 |
| General Maintenance | 700 |
| **TOTAL MAINTENANCE/SECURITY** | **5,406** |

**MARKETING**

| | |
|---|---:|
| Printing | 600 |
| Print Advertising | 114 |
| TV/Radio Advertising | 250 |
| Billboard Advertising | 500 |
| Marketing | 600 |
| **TOTAL MARKETING** | **2,064** |

**TAXES & INSURANCE**

| | |
|---|---:|
| Real Estate Tax Expense | 5,745 |
| G/P Liability Insurance | 1,295 |
| Umbrella Insurance | 0 |
| Property and Auto Insurance | 1,943 |
| **TOTAL TAXES & INSURANCE** | **8,983** |

**UTILITIES**

| | |
|---|---:|
| Electric-Usage | 2,250 |
| Electric-Line charges | 900 |
| Gas-Building | 500 |
| Water & Sewer | 350 |
| **TOTAL UTILITIES** | **4,000** |

**BANKRUPTCY & ADEQUATE PROTECTION EXPENSE**

| | |
|---|---:|
| Management Fees | 9,000 |
| Retainer Fee (Legal) | 10,000 |
| Legal Fee (90% of April Fees) | 33,300 |
| BOND REMARKETING FEE | 1,000 |
| INTEREST EXPENSE | 3,000 |
| LC FEES | 9,529 |
| TRUSTEE FEES | 292 |
| **TOTAL BANKRUPTCY & AP EXPENSE** | **66,121** |
| **TOTAL EXPENSES** | **169,862** |

| | | |
|---|---:|---|
| **NET CASH FLOW (Excludes Medicaid Revenue)** | **-9,616** | Beginning Balance + May Receipts - All Expenses |