## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MORRIS SENIOR LIVING, LLC and | ) | Case No. 12-05364 |
| MORRIS REAL ESTATE HOLDINGS II | ) | (Jointly Administered) |
| LLC, | ) | Hon. Jacqueline P. Cox |
| | ) | |
| Debtors. | ) | Hearing Date: June 27, 2013 |
| | ) | Hearing Time:  9:30 a.m. |

### NOTICE OF MOTION

To:  See Attached Service List

PLEASE TAKE NOTICE that we shall appear on **Thursday, June 27, 2013, at 9:30 a.m.,** we shall appear before the Honorable Jacqueline P. Cox of the United States Bankruptcy Court, Northern District of Illinois, in Courtroom 680 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION OF CHAPTER 11 TRUSTEE (1) FOR AUTHORITY TO DISTRIBUTE SALE PROCEEDS TO SECURED LENDER PURSUANT TO PRIOR COURT ORDERS, AND (2) TO EXTEND CHALLENGE PERIOD**, a copy of which is hereby served upon you.

BRAD A. BERISH, ESQ. (ARDC #06200891)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
(312) 435-1050
Fax (312) 435-1059
**Counsel for Chapter 11 Trustee**

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the Notice and Motion referenced herein was served upon the parties listed on the service list below, via ECF on June 24, 2013.

By:   /s/ Brad A. Berish

## SERVICE LIST

## VIA ECF

- Yeny C. Estrada    yestrada@edwardswildman.com,
  kconnor@edwardswildman.com;ECFFilings@edwardswildman.com
- Andrew A Jacobson    ajacobson@bupdlaw.com, nwood@bupdlaw.com
- Steve Jakubowski    sjakubowski@rsplaw.com, lwilliams@rsplaw.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Ethan Ostrow    eostrow@bupdlaw.com
- Michael L Ralph    mralph@rss-chtd.com, vkingsley@rrs-chtd.com;
  dcasey@rss-chtd.com;jtolemy@rss-chtd.com;jobereiner@rss-chtd.com
- Maurice J Salem    salemlaw@comcast.net
- Jean Soh    jsoh@polsinelli.com, chicagodocketing@polsinelli.com
- Jerry L Switzer    jswitzer@polsinelli.com, chicagodocketing@polsinelli.com
- Gregg Szilagyi    gs@tailserv.com, gszilagyi@ecf.epiqsystems.com;gszilagyi@epiqtrustee.com
- Stephen G Wolfe    steve.g.wolfe@usdoj.gov, jennifer.r.toth@usdoj.gov

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MORRIS SENIOR LIVING, LLC and | ) | Case No. 12-05364 |
| MORRIS REAL ESTATE HOLDINGS II | ) | (Jointly Administered) |
| LLC, | ) | Hon. Jacqueline P. Cox |
| | ) | |
| Debtors. | ) | Hearing Date: June 27, 2013 |
| | ) | Hearing Time: 9:30 a.m. |

**MOTION OF CHAPTER 11 TRUSTEE (1) FOR AUTHORITY TO DISTRIBUTE SALE
PROCEEDS TO SECURED LENDER PURSUANT TO PRIOR COURT ORDERS, AND
(2) TO EXTEND CHALLENGE PERIOD**

TO:    THE HONORABLE JACQUELINE P. COX,
       UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Gregg Szilagyi, not individually, but solely as the duly appointed and

serving Chapter 11 trustee (the "**Trustee**") in the above-captioned cases, by and through his

undersigned counsel, for his motion (the "**Motion**") (1) For Authority To Distribute Sale

Proceeds To Secured Lender Pursuant To Prior Court Orders, and (2) To Extend Challenge

Period, and respectfully states as follows:

I.    **BACKGROUND**

A.    **Jurisdiction, Case Background, and Appointment of Trustee**

1.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.    On February 14, 2012 (the "**Petition Date**"), each of the debtors herein (the

"**Debtors**"), Morris Senior Living, LLC, and Morris Real Estate Holdings II LLC ("**Morris Real

Estate**") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy

Code, 11 U.S.C. §§ 101 et seq. (the "**Code**"). From the Petition Date through April 11, 2012, the

217778                                      1

Debtors remained in possession of their assets and continued to operate their businesses as

debtors in possession under 11 U.S.C. §§ 1107 and 1108 in the above-captioned cases (the

"**Chapter 11 Cases**").

4.      On April 12, 2012, this Court entered that certain Order [Dkt. No. 87] appointing

the Trustee as trustee for the Debtors, thereby taking the Debtors out of possession and placing

their assets and businesses under the control of the Trustee.

5.      There has been no committee of unsecured creditors appointed in the Chapter 11

Cases.

**B.      The Debtors' Business and The Lender's Allowed Secured Claim**

6.      Until May 29, 2013, the Debtors had owned and operated a 58-unit (71 total

occupancy) supportive living facility located at 1221 South Edgewater, Morris, Illinois (the

"**Facility**").

7.      Following his appointment, the Trustee negotiated with Northbrook Bank & Trust

Company, successor to First Chicago Bank and Trust (the "**Lender**") for, and obtained Court

approval of, an Agreed Final Order Authorizing Chapter 11 Trustee's Use of Cash Collateral and

Granting Related Relief (Dkt. No. 133) on June 4, 2012, under which the Lender agreed to allow

the Trustee to use cash collateral, and if necessary, obtain post-petition financing, in order to,

*inter alia*, continue to operate the Facility (the "**Final Cash Collateral Order**").

8.      In addition, following his appointment, the Trustee negotiated with the Lender

for, and obtained this Court's approval of, that certain Stipulation And Agreed Order Approving

Rule 919 Compromise (Dkt. No. 161) ("**Lender Settlement Order**").  A copy of the Lender

Settlement Order is attached hereto as **Exhibit A**.  Pursuant to the Lender Settlement Order: (a)

the Lender holds an allowed prepetition claim against the Debtors, secured by first liens on

substantially all assets of the Debtors, including the Facility, in the amount of $9,350,314.82 (the

"**Allowed Lender Secured Claim**"); and (b) the Allowed Lender Secured Claim consists of (i)

$1,185,869.82 which is liquidated (the "**Liquidated Portion of Allowed Lender Secured**

**Claim**"), and (ii) $8,164,445 of which is unliquidated and pertains to an outstanding and, as of

yet, undrawn Letter of Credit (as defined in the Lender Settlement Order, the "**Letter of**

**Credit**") issued by the Lender for the benefit of Morris Real Estate and in connection with

certain Multi-Family Housing SLF Revenue Bonds (as the Bonds are defined in the Lender

Settlement Order, the "**Bonds**") relating to the purchase and/or construction of the Facility.  As

explained in the Lender Settlement Order, the Lender has asserted additional prepetition claims

of in excess of $15 million secured by the Debtors' assets that arise from loans made to affiliates

of the Debtors and certain cross-collateralization agreements entered into by the Debtors in 2010

(the "**Deferred Lender Claims**"), but the Lender Settlement Order provides that the challenge

period, as defined therein, for the Trustee to object to the Deferred Lender Claim is still open but

will expire on the 31st day after the Sale Order becomes nonappealable, or on or about July 15,

2013 (the "**Challenge Period**").

      **C.**      **The Recent Sale of the Facility**

      9.      On March 21, 2013, this Court entered an Order approving of the Trustee's

motion to sell (the "**Asset Sale**") the Facility and related assets of the Debtors to a buyer for

$7,190,000 (Dkt. No. 248) (the "**Sale Order**").  A copy of the Sale Order is attached hereto as

**Exhibit B**.  The Sale Order was appealed by only one party, the Debtor, Morris Real Estate,

however, that appeal was dismissed by a District Court Order entered on May 14, 2013 (Dkt. No.

18 in D.Ct. case no. 13 cv 2457), for the reasons set forth in the District Court's Memorandum

Opinion and Order that is attached hereto as **Exhibit** C.  No further appeals of that Sale Order

were taken, and accordingly, the Sale Order is now final and nonappealable.

217778                  3

10.     The Asset Sale closed on May 29, 2013, and the net proceeds received by the

Trustee from the Asset Sale is $7,030,274.55, which the Trustee is currently holding in an

interest bearing account (the "**Sale Proceeds**") that may not be distributed except upon further

Order of this Court according to paragraph 18 of the Sale Order.

11.     However, the Sale Order (para. 4) also provides that the Lender's claims,

including the Allowed Lender Secured Claim, attaches to the Sale Proceeds with the same

validity and priority as existed prior to the Asset Sale, which under paragraph 4 of the Lender

Settlement Order constitutes first priority liens and security interests with respect to such

Allowed Lender Secured Claim.

**III.    RELIEF REQUESTED**

**A.      Request For Authority To Distribute Sale Proceeds To Lender**

12.     Pursuant to paragraph 18 of the Sale Order and paragraph 6 of the Lender

Settlement Order, the Trustee hereby requests authority to pay an amount up to the entire Sale

Proceeds to the Lender, which shall be applied by the Lender to reduce the Allowed Lender

Secured Claim. [1]

13.     As stated, the Lender Allowed Secured Claim is $9,350,314.82, which amount far

exceeds the Sale Proceeds totaling $7,030,274.55.  In addition, the Lender Settlement Order and

the Sale Order together provide that the Allowed Secured Claim represents a first, and only, lien

against the Sale Proceeds.  Accordingly, the Lender has a superior right and interest in the Sale

Proceeds.

14.     Pursuant to paragraph 6 of the Lender Settlement Order, the "[p]ayment of the

[Allowed Lender Secured] Claim shall remain subject to further order of this Court, provided,

---

[1]      As of May 31, 2013, the Trustee was also holding in excess of $500,000 of cash collateral of the
Lender under the Final Cash Collateral Order, which funds arose primarily from the prior operations of
the Facility.  This Motion does not pertain to the foregoing funds or to any other assets other than the Sale
Proceeds.

217778                                         4

however, and in connection therewith, any payment of the… [Unliquidated Portion of Allowed Lender Secured Claim] shall require that Lender provide evidence to the Trustee that Lender has honored and paid on a draw request under the terms of the Letter of Credit." Accordingly, the request in this Motion for authority to pay an amount up to the Sale Proceeds to the Lender shall be subject to the following condition:

> That any payment of the Sale Proceeds in an amount greater than the Liquidated Portion of Allowed Lender Secured Claim (i.e., $1,185,869.82), shall be subject to the Lender first providing to the Trustee evidence that is satisfactory to the Trustee that the Lender has honored and paid on a draw request under the terms of the Letter of Credit in an amount that equals or exceeds the amount of the Sale Proceeds to be paid to the Lender.

### B.    Request For Extension of Challenge Period

15.    Since the Allowed Lender Secured Claim ($+9.3 mil.) currently far exceeds the Sale Proceeds and other cash currently held by the Trustee, it is unclear whether it will ever become necessary for the Trustee to review and/or object to the Deferred Lender Claims that currently exceed $15 million. Accordingly, in an effort to avoid having to incur expenses to review that claim before the current Challenge Period expires on July 15, 2013, the Trustee and the Lender have agreed to extend the current Challenge Period for the Trustee only to a date which is forty-five (45) days after the Trustee's receipt of a written notice from the Lender that is sent by email and overnight delivery to the Trustee and his counsel, that requests termination of the Challenge Period.

## IV.    NOTICE

16.    The Trustee has served notice of this Motion by at least three days (3) days notice upon counsel for the Lender; counsel for the the United States Trustee's Office in this District; and all other entities or individuals that have appeared in these Chapter 11 Cases. The Trustee requests that such notice be deemed adequate and reasonable under the Code and Bankruptcy Rules.

217778                                             5

WHEREFORE, Gregg Szilagyi, not individually, but solely as the duly appointed and

serving Chapter 11 trustee, respectfully requests the entry of the Order attached hereto and that

he be awarded such other and further relief as is otherwise just and equitable.

Respectfully submitted,

GREGG SZILAGYI, CHAPTER 11 TRUSTEE For
the Estates of Morris Senior Living, LLC, and
Morris Real Estate Holdings II LLC

By: _/s/ Brad A. Berish_____
One of his attorneys

BRAD A. BERISH, ESQ. (ARDC#06200891)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for the Chapter 11 Trustee**

# EXHIBIT A

12-05364:156.1:Motion to Compromise or Settlement per Rule 9019:Proposed Order Stipulation and Agreed Order Approving Rule 9019 Compromise Entered: 9/27/2(

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MORRIS SENIOR LIVING, LLC and | ) Case No. 12-05364 |
| MORRIS REAL ESTATE HOLDINGS II | ) (Jointly Administered) |
| LLC, | ) Hon. Jacqueline P. Cox |
| | ) |
| Debtors. | ) Hearing Date: October 19, 2012 |
| | ) Hearing Time: 9:30 a.m. |

### STIPULATION AND AGREED ORDER APPROVING RULE 9019 COMPROMISE

THIS CAUSE coming on to be heard on the motion (the "Motion") of Gregg Szilagyi,

not individually, but solely as the duly appointed and serving Chapter 11 trustee (the "Trustee")

in the above-captioned cases, to approve the settlement and compromise between the Trustee and

Northbrook Bank & Trust Company, successor to First Chicago Bank and Trust ("Lender")

pursuant to 11 U.S.C. §§ 101, 363 and 502(b) and Rules 2002 and 9019 of the Federal Rules of

Bankruptcy Procedure; due written notice hereof having been given to the Office of the United

States Trustee, all known creditors, the debtors and all other parties entitled thereto; all

objections to the Motion having been either withdrawn, overruled, or resolved as provided

herein; the Court having heard and considered the statements of counsel present and being

otherwise fully advised in the premises;

**THE PARTIES HEREBY STIPULATE, AND THE COURT HEREBY FINDS,**
**THAT:**

### Case Background, Appointment of Trustee and Jurisdiction

A.      On February 14, 2012 (the "Petition Date"), the debtors herein (the "Debtors")

filed voluntary petitions for relief commencing the above-captioned chapter 11 cases (the

"Chapter 11 Cases"). Thereafter, the Court entered an order authorizing the joint administration of the Chapter 11 Cases.

B.    After the Petition Date, the Debtors operated their businesses as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

C.    On February 23, 2012, the Court entered that certain Agreed Interim Order Authorizing Use of Cash Collateral (the "Original Cash Collateral Order"), pursuant to which the Court, among other things, authorized the Debtors to use cash collateral pursuant to the terms and conditions set forth therein. The Court thereafter entered minute orders extending the Original Cash Collateral Order from time to time.

D.    On April 2, 2012, the Court entered an order authorizing and directing the U.S. Trustee to appoint a chapter 11 trustee for the Debtors.

E.    On April 12, 2012, the Court entered an order approving the appointment of the Trustee as the chapter 11 trustee for the Debtors in the Chapter 11 Cases.

F.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

**Proofs of Claim Filed by Lender**

G.    Lender has asserted claims against the Debtors as set forth in the Original Cash Collateral Order and pursuant to a Proof of Claim filed in each of the Chapter 11 Cases on June 28, 2012, Claim No. 1 in Case No. 12-5365 and Claim No. 8 in Case No. 12-5364 (collectively, the "Lender POC"). The Lender POC and the exhibits filed therewith are adopted herein by express reference.

### Morris Real Estate Loan Documents

H.    On December 1, 2007, Debtor Morris Real Estate Holdings II, LLC ("Morris Real Estate") executed and delivered to Lender that certain Mortgage, Security Agreement and Fixture Financing Statement (the "Mortgage") to secure its obligations to Lender under the Reimbursement Agreement (as hereinafter defined). The Mortgage granted Lender a first priority lien against the real estate and improvements located at and commonly known as 1221 S. Edgewater Drive, Morris, Illinois (the "Real Property"), and security interest in the personal property located at or used in connection with the Real Estate as set forth therein (the "Personal Property" and, together with the Real Estate, the "Property"). Lender caused the Mortgage to be duly recorded against the Property with the Recorder of Deeds of Grundy County, Illinois, on December 31, 2007, as Document No. 485442. A true and correct copy of the Mortgage is attached as Exhibit A to the Lender POC. To perfect its security interest in the Personal Property, Lender caused a UCC-1 Financing Statement to be filed with the Illinois Secretary of State on December 28, 2007, as File No. 12818629, a true and correct copy of which is attached as Exhibit B to the Lender POC.

I.    On December 1, 2007, Morris Real Estate executed and delivered to Lender that certain Absolute Assignment of Leases and Rents (the "AOR") relating to the Property to secure its obligations to Lender under the Reimbursement Agreement. The AOR granted Lender a first priority lien on the rents of the Property and the other assets identified therein. Lender caused the AOR to be duly recorded against the Property with the Recorder of Deeds of Grundy County, Illinois, on December 31, 2007, as Document No. 485443. A true and correct copy of the AOR is attached as Exhibit C to the Lender POC.

12-05364:156.1:Motion to Compromise or Settlement per Rule 9019:Proposed Order Stipulation and Agreed Order Approving Rule 9019 Compromise Entered: 9/27/2

J.      On December 1, 2007, Morris Real Estate executed and delivered to Lender that

certain Reimbursement Agreement (the "Reimbursement Agreement"), pursuant to which Morris

Real Estate agreed, upon an Event of Default, immediately to prepay to Lender an amount equal

to the "Available Amount" under that certain Irrevocable Transferrable Letter of Credit dated

December 28, 2007 (the "Letter of Credit"), which Lender issued in connection with certain

Multi-Family Housing SLF Revenue Bonds (Morris Supportive Living Project), Series 2007, in

the aggregate principal amount of $8,000,000.00 on or relating to the Property, governed by that

certain Indenture of Trust by and between the Upper Illinois River Valley Development

Authority and Wells Fargo Bank, National Association, as Trustee, dated December 1, 2007 (the

"Indenture"). True and correct copies of the Reimbursement Agreement, the Letter of Credit,

and the Indenture are attached as Exhibits D, E and F to the Lender POC, respectively.

K.      On December 1, 2007, Debtor Morris Senior Living, LLC ("Morris Senior

Living") executed and delivered to Lender that certain Guaranty (the "Morris Senior Living

Guaranty"), pursuant to which Morris Senior Living unconditionally and irrevocably guaranteed

to Lender the timely payment and performance when due under the Reimbursement Agreement

and any other related loan documents. A true and correct copy of the Morris Senior Living

Guaranty is attached to the Lender POC as Exhibit G.

**Original Cross-Default Cross-Collateralization Agreement**

L.      On December 1, 2007, Morris Real Estate and Prism Healthcare Management

Group, LLC ("Prism") executed and delivered to Lender that certain Cross-Default and Cross-

Collateralization Agreement (the "Original Cross-Default Cross-Collateralization Agreement"),

pursuant to which (i) any default under the financing and security agreements executed by

Morris Real Estate and described therein (collectively, the "Morris Real Estate Documents")

would be a default under the financing and security agreements executed by Prism in favor of Lender and described therein (collectively the "Prism Documents"), and a default under the Prism Documents would constitute a default of the Morris Real Estate Documents, and (ii) Morris Real Estate granted a security interest in, and assigned and pledged to Lender, all of the collateral pledged to secure repayment of the obligations arising under the Morris Real Estate Documents, as collateral for the obligations arising under the Prism Documents. Lender caused the Original Cross-Default Cross-Collateralization Agreement to be duly recorded against the Property with the Recorder of Deeds of Grundy County, Illinois, on December 31, 2007, as Document No. 485445. A true and correct copy of the Original Cross-Default Cross-Collateralization Agreement is attached to the Motion as Exhibit 1 thereto.

**Morris Senior Living Loan Documents**

M. On November 1, 2007, Morris Senior Living executed and delivered to Lender that certain Loan and Security Agreement (as amended, the "Loan Agreement"), pursuant to which Lender agreed to make revolving loans to Morris Senior Living up to a commitment amount of $500,000.00. Pursuant to the Loan Agreement, Morris Senior Living granted Lender a security interest in and to any and all property of Morris Senior Living as set forth therein. A true and correct copy of the Loan Agreement is attached to the Lender POC as Exhibit H. To perfect its security interest in the personal property of Morris Senior Living, Lender caused a UCC-1 Financing Statement to be filed with the Illinois Secretary of State on September 23, 2011, as File No. 16627534, a true and correct copy of which is attached hereto as Exhibit I.

N. On November 1, 2007, Morris Senior Living executed and delivered to Lender a Revolving Note in the original principal amount of up to $500,000.00 (as amended, the "Morris

Senior Living Note"). A true and correct copy of the Morris Senior Living Note is attached to the Lender POC as Exhibit J.

### Amended Cross-Default and Cross-Collateralization Agreement

O.    Lender asserts that certain of the Debtors' prior management and/or members have owned or controlled the following entities: Prism; Morris Healthcare and Rehabilitation Center, LLC ("Morris Healthcare"); Amboy Real Estate Holdings, LLC ("Amboy Real Estate"); Amboy Nursing Acquisition & Management, LLC ("Amboy Nursing"); Rockford Healthcare & Rehabilitation Center, LLC ("Rockford"); Dixon Healthcare & Rehabilitation Center, LLC ("Dixon"); and Mattoon Healthcare & Rehabilitation Center, LLC ("Mattoon" and, together with Morris Healthcare, Prism, Amboy Real Estate, Amboy Nursing, Rockford, and Dixon, shall be referred to herein as the "Affiliates").

P.    Lender asserts that it has made loans and other financial accommodations to each of the Affiliates (along with the loans and other financial accommodations to the Debtors and as otherwise set forth herein, the "Loans"), pursuant to the following notes (collectively, the "Affiliate Notes"):

    i.    That certain Third Replacement Revolving Note dated August 31, 2010, in the original principal amount of $2,500,000.00, executed by Morris Healthcare and delivered to Lender (as amended, the "Morris Healthcare Note"), a true and correct copy of which is attached to the Lender POC as Exhibit K-1;

    ii.    That certain Fifth Replacement Revolving Note dated August 31, 2010, in the original principal amount of $775,000.00, executed by Prism and delivered to Lender (as amended, the "Prism Note"), a true and correct copy of which is attached to the Lender POC as Exhibit K-2;

    iii.  That certain Sixth Replacement Promissory Note dated January 31, 2011, in the original principal amount of $4,165,000.00, executed by Amboy Real Estate and delivered to Lender (as amended, the "Amboy Real Estate Note"), a true and correct copy of which is attached to the Lender POC as Exhibit K-3;

    iv.  That certain Promissory Note dated September 1, 2009, in the original principal amount of $400,000.00, executed by Amboy Nursing and delivered to Lender (as amended, the "Amboy Nursing Term Note"), a true and correct copy of which is attached to the Lender POC as Exhibit K-4;

    v.  That certain Third Replacement Revolving Note dated August 31, 2010 in the original principal amount of $1,250,000.00 and delivered to Lender (as amended, the "Amboy Nursing Revolving Note"), a true and correct copy of which is attached to the Lender POC as Exhibit K-5;

    vi.  That certain Third Replacement Revolving Note dated August 31, 2010, in the original principal amount of $1,100,000.00, executed by Rockford and delivered to Lender (as amended, the "Rockford Note"), a true and correct copy of which is attached to the Lender POC as Exhibit K-6; and

    vii.  That certain Third Replacement Revolving Note dated August 31, 2010, in the original principal amount of $800,000.00, executed by Dixon and delivered to Lender (as amended, the "Dixon Note"), a true and correct copy of which is attached to the Lender POC as Exhibit K-7.

    Q.  Lender asserts that (i) on August 31, 2010, the Debtors, the Affiliates, Lewis J. Borsellino and Lender entered into that certain Amended and Restated Cross-Default and Cross-Collateralization Agreement, which amended and replaced the Original Cross-Default and Cross-

Collateralization Agreement (the "Amended Cross-Default and Cross-Collateralization

Agreement"), pursuant to which they agreed that a default of any of the Loans would be a default

of each of the other Loans, and (ii) the Debtors and the Affiliates granted a security interest in,

and assigned and pledged to, Lender all of the collateral pledged to secure repayment of each of

the Loans as collateral for all of the other Loans, and that in the event of any default of any Loan,

said security interests, assignments and pledges shall permit Lender to exercise all rights of

enforcement and remedies available to it under any of the loan documents, as secured party and

as mortgagee. The Amended Cross-Default and Cross-Collateralization Agreement was

recorded against the Property with the Recorder of Deeds of Grundy County, Illinois, on October

5, 2010, as Document No. 514455. A true and correct copy of the Amended Cross-Default and

Cross-Collateralization Agreement is attached to the Lender POC as Exhibit L.

     R.     In addition, Lender asserts that it made financial accommodations to certain of the

Affiliates, as follows:

     i.  Certain overdrafts incurred by certain of the Affiliates (collectively, the

"Overdrafts"), as memorialized in a letter agreement dated July 23, 2010, executed and

delivered to Lender by certain of the Affiliates (as modified by a letter dated July 28,

2010, the "Original Letter Agreement"), a copy of which is attached to the Lender POC

as Exhibit M; and

     ii.  Certain protective advances incurred by certain of the Affiliates (collectively, the

"Protective Advances"), as memorialized in a letter agreement dated November 1, 2011,

executed and delivered to Lender by certain of the Affiliates (the "New Letter

Agreement"), a copy of which is attached to the Lender POC as Exhibit N.

12-05364:156.1:Motion to Compromise or Settlement per Rule 9019:Proposed Order Stipulation and Agreed Order Approving Rule 9019 Compromise Entered: 9/27/2(

S.    As set forth in the Lender POC, Lender asserts that each of the Debtors is liable

for the full amount of the indebtedness owed to Lender as of the Petition Date of $24,860,387.51,

plus costs, expenses, and attorneys' fees incurred by Lender as of the Petition Date, due under all

of the Loans, pursuant to the Amended Cross-Default and Cross-Collateralization Agreement,

the Original Letter Agreement, the New Letter Agreement, and other loan documents (the "Total

Affiliate Debt"), and detailed as follows:

| Loan | Balance Due |
|---|---|
| Reimbursement Agreement: | $8,164,445.00 |
| Morris Senior Living Note: | $280,274.91 |
| Morris Healthcare Note: | $2,637,312.20 |
| Prism Note: | $905,594.91 |
| Amboy Real Estate Note: | $4,354,463.05 |
| Amboy Nursing Term Note: | $309,792.11 |
| Amboy Nursing Revolving Note: | $1,320,066.54 |
| Rockford Note: | $1,226,285.25 |
| Dixon Note: | $845,099.93 |
| Overdrafts: | $3,997,478.06 |
| Protective Advances: | $819,575.55 |
| Total: | $24,860,387.51 |

T.    Defaults have occurred under the Reimbursement Agreement, the Morris Senior

Living Note, the Prism Note, the Original Cross-Default Cross-Collateralization Agreement and

the Amended Cross-Default and Cross-Collateralization Agreement, pursuant to, among other

things: the Morris Senior Living Note matured by its terms on May 15, 2011, without any

payment thereon; the Prism Note matured by its terms on June 15, 2011, without any payment

thereon; and taxes on the Property for the second installment for the year 2009 and the first and

second installments for the year 2010 were sold, which constitutes a default under the Mortgage

and the Reimbursement Agreement.  Lender asserts that additional defaults under the Loans have

occurred as set forth more fully in the Lender POC.

**Final Cash Collateral Order and Challenge Period**

U.    This Court entered that certain Agreed Final Order Authorizing Chapter 11
Trustee's Use of Cash Collateral and Granting Related Relief on June 4, 2012 (the "Final Cash
Collateral Order"). The Final Cash Collateral Order was entered on the docket [Docket No. 131]
in the Chapter 11 Cases on June 5, 2012.

V.    The Final Cash Collateral Order amended and replaced in its entirety the Original
Cash Collateral Order.

W.    Pursuant to the Final Cash Collateral Order, the Trustee was granted no more than
forty-five (45) days from the entry of the order (the "Challenge Period") to object to, challenge,
or seek to avoid the amount, validity, or enforceability of the "Loan Documents," the "Existing
Indebtedness," or the "Liens" as those terms are defined in the Final Cash Collateral Order.

X.    Pursuant to various agreements between the Trustee and Lender, which
agreements were approved after notice and hearing through orders entered by this Court (Docket
Nos. 140 and 154), the Challenge Period was extended for the Trustee only and is currently set to
expire on October 19, 2012.

Y.    The Trustee and his counsel have commenced an investigation of the Lender POC
to confirm the alleged validity, enforceability and amount of the Loan Documents, the Existing
Indebtedness and the Liens as set forth and provided in the Final Cash Collateral Order (the
"Investigation").

Z.    As a result of the Investigation, and following good faith and arms' length
negotiations, Lender and the Trustee have reached compromise and settlement, as provided
herein, with respect to a portion of the Lender POC.

AA.    The Trustee and Lender have concluded that the execution by them of this Stipulation and Agreed Order will avoid protracted and expensive litigation, and acknowledge that they are receiving a substantial and valuable benefit from the settlement contained herein.

**NOW, THEREFORE, THE PARTIES HEREBY AGREE, AND THE COURT HEREBY ORDERS, THAT:**

1.    The relief requested in the Motion is granted as set forth herein.

2.    All objections to the entry of this Stipulation and Agreed Order and the relief granted herein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

3.    The paragraphs contained in the foregoing preamble and findings and conclusions, if any, are incorporated by reference in this Stipulation and Agreed Order, and the Trustee and Lender consent and stipulate to the facts contained in such preamble and findings and to the entry of this Stipulation and Agreed Order.

4.    The Lender POC is hereby allowed as a prepetition claim against the Debtors, secured by the "Liens" and the "Postpetition Liens" (if applicable) in the "Collateral," as those terms are defined in the Final Cash Collateral Order, in the amount of $9,350,314.82 (the "Allowed Claim") with respect to the indebtedness described in paragraph S above which pertains to the Reimbursement Agreement, the Morris Senior Living Note, and the Prism Note (the "Allowed Claim Agreements").

5.    The Allowed Claim: (i) does not include, but is without prejudice to (collectively, the "Deferred Claim"): (a) Lender's prepetition costs, expenses and attorneys' fees relating to the Allowed Claim Agreements secured by the Mortgage, the AOR, and the Loan Agreement, or (b) the remainder of the Total Affiliate Debt arising under or relating to the Affiliate Notes (other

12-05364:156.1:Motion to Compromise or Settlement per Rule 9019:Proposed Order Stipulation and Agreed Order Approving Rule 9019 Compromise Entered: 9/27/20

than the Prism Note), the Overdrafts and the Protective Advances, as well as Lender's prepetition costs, expenses and attorneys' fees relating thereto; and (ii) shall be subject and subordinate to the payment of the "Carve-Out" (as defined in the Final Cash Collateral Order).

6.      Payment of the Allowed Claim shall remain subject to further order of this Court, provided, however, and in connection therewith, any payment of the portion of the Allowed Claim consisting solely of the indebtedness owed by Morris Real Estate pursuant to the Reimbursement Agreement shall require that Lender provide evidence to the Trustee that Lender has honored and paid on a draw request under the terms of the Letter of Credit.

7.      If and to the extent that cash or proceeds of assets and property of Morris Real Estate is used to redeem, whether in whole or in part, the "Bonds" (as such term is defined in the Indenture), resulting in a decrease or elimination of Lender's liability under the Letter of Credit, the allowed portion of the Allowed Claim consisting solely of the indebtedness owed by Morris Real Estate pursuant to the Reimbursement Agreement shall be automatically reduced dollar-for-dollar by the amount such cash or proceeds is used to redeem the Bonds.

8.      Entry of this Stipulation and Agreed Order is without prejudice to the Trustee's and Lender's rights and entitlements under the Final Cash Collateral Order, including, without limitation, Lender's right and entitlement to be repaid for any and all "Postpetition Advances" (as defined in the Final Cash Collateral Order) made by Lender to the Trustee for the benefit of the Debtors' estates.

9.      The Challenge Period is hereby extended for only the Trustee, and solely with respect to the Deferred Claim (the "Extended Challenge Period"). During the Extended Challenge Period the Trustee may object to, challenge and/or seek to avoid the amount, validity, or enforceability of the Deferred Claim, and the Loan Documents and Liens related thereto. The

Extended Challenge Period shall expire automatically on the thirty-first (31st) day after entry of a final, non-appealable order approving the sale of substantially all of the Debtors' assets.

10. Entry of this Stipulation and Agreed Order shall be without prejudice to Lender's right to amend the Lender POC to itemize and account for Lender's costs, expenses and attorneys' fees incurred as of the Petition Date which is part of the Deferred Claim.

11. The provisions of this Stipulation and Agreed Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Chapter 11 Cases or in any successor case upon the conversion or dismissal of any of the Chapter 11 Cases (a "Successor Case"): (i) confirming any plan of reorganization; (ii) appointing a new trustee, examiner, receiver or person with similar authority with respect to the Debtors' assets or estates or any portion thereof; (iii) converting the Chapter 11 Cases or any Successor Case to a case under chapter 7 of the Bankruptcy Code; or (iv) dismissing the Chapter 11 Cases or any Successor Cases.

12. The provisions of this Stipulation and Agreed Order shall inure to the benefit of, and shall be binding upon, the Trustee, the Debtors and Lender and their respective successors and assigns, including, but not limited to, any other trustee or representative now or hereafter appointed as a legal representative of Debtors, or their estates, in the Chapter 11 Cases, and shall be binding on all creditors and other parties in interest that received notice of the Motion.

ENTER: _Jacqueline P. Cox_

_J. Cox_
_____
UNITED STATES BANKRUPTCY JUDGE

OCT 18 2012

12-05364:156.1:Motion to Compromise or Settlement per Rule 9019:Proposed Order Stipulation and Agreed Order Approving Rule 9019 Compromise Entered: 9/27/2

**AGREED AS TO FORM AND SUBSTANCE:**

**Gregg Szilagyi, not individually, but solely as
chapter 11 trustee of Morris Senior Living,
LLC and Morris Real Estate Holdings II LLC**          **Northbrook Bank & Trust Company**

By: /s/ Nathan Q. Rugg                          By: /s/ Jerry L. Switzer, Jr.
    One of his attorneys                              One of its attorneys

Brad A. Berish                                   Jerry L. Switzer, Jr.
Nathan Q. Rugg                                   Anthony C. Porcelli
Adelman & Gettleman, Ltd.                        Polsinelli Shughart PC
53 W. Jackson Blvd., Suite 1050                  161 N. Clark Street, Suite 4200
Chicago, Illinois 60604                          Chicago, Illinois 60601
PH: (312) 435-1050                               PH: (312) 819-1900
FAX: (312) 435-1059                              FAX: (312) 819-1910
Email: bberish@ag-ltd.com                        Email: jswitzer@polsinelli.com
       nrugg@ag-ltd.com                                 aporcelli@polsinelli.com

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MORRIS SENIOR LIVING, LLC and | ) | Case No. 12-05364 |
| MORRIS REAL ESTATE HOLDINGS II | ) | (Jointly Administered) |
| LLC, | ) | Hon. Jacqueline P. Cox |
| | ) | |
| Debtors. | ) | |
| | ) | |

## ORDER: (A) APPROVING SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS' ESTATES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (B) AUTHORIZING TRUSTEE TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SUCH SALE

At Chicago, in said District, this 21st day of March, 2013.

THIS CAUSE coming on to be heard upon the motion (the **"Sale Motion"**)[1] of Gregg Szilagyi, not individually, but solely as the duly appointed and serving Chapter 11 trustee of the above captioned debtors (the **"Trustee"**), for the entry of an order: (A) authorizing Trustee to enter into asset purchase agreement for the sale of substantially all of the assets of the Debtors' estates; (B) approving the sale process, bidding procedures, and public auction thereunder; (C) authorizing the sale of such assets free and clear of liens, claims, encumbrances, and interests; and (D) authorizing the process for assuming and assigning, or rejecting a collective bargaining agreement and other executory contracts and unexpired leases in connection with such sale; this Court on February 12, 2013, having approved the Sale Motion in part by entering the Order: (A) authorizing Trustee to enter into stalking horse asset purchase agreement for the sale of substantially all of the assets of the Debtors' estates; (B) approving the sale process, bidding procedures, and public auction thereunder; and (C) authorizing the process for assuming and assigning, or rejecting, a collective bargaining agreement and other executory contracts and unexpired leases in connection with such sale (the **"Sale Procedure Order"**)(Dkt. No. 210); the Trustee having held an auction on March 6, 2013, pursuant to the Sale Procedure Order (the **"Auction"**) for the sale of substantially all of the assets of the Debtors' Estates (the **"Sale**

---

[1]    Capitalized terms not defined herein shall have the same meaning ascribed to them in the Sale Motion.

**Property**" shall have the meaning set forth in the APA); and the Trustee having selected (a)

Morris Real Estate, LLC, an Illinois limited liability company, as the Successful Bidder (the

"**Buyer**") for having made the highest or otherwise best bid at the Auction pursuant to the terms

of that Asset Purchase Agreement dated as of January 30, 2013, as amended by that certain First

Amendment To Asset Purchase Agreement dated as of March 12, 2013, by and between the

Trustee, on behalf of the Debtors, and the Buyer (the "**APA**", and the sale contemplated under

the terms of the APA shall be referred to herein as the "**Asset Sale**"), a copy of which is attached

as exhibit A to the Sale Motion and exhibit D to the Trustee Reply (hereafter defined) and by

express reference made a part hereof, and (b) Doreen Mermelstein, an Illinois resident, as the

Backup Bidder (the "**Backup Bidder**") pursuant to the terms of that Assets Purchase Agreement

dated as of March 4, 2013, by and between the Trustee, on behalf of the Debtors, and the Backup

Bidder, was selected by the Trustee as the Backup Bid, a copy of which is attached as exhibit C

to the Trustee Reply and by express reference made a part hereof; due written notice of the Sale

Motion, Sales Procedure Order, and Auction, having been given to all known creditors and other

interested parties in these Chapter 11 Cases; only one objection having been filed to the Sale

Motion by Morris Real Estate (dkt. No. 235) (the "**Morris Real Estate Objection**"); the Lender

having filed a response in opposition to the Morris Real Estate Objection (Dkt. No. 238) (the

"**Lender Response**"), and the Trustee having filed a reply in support of the Sale Motion and in

opposition to the Morris Real Estate Objection (Dkt. No. 240) (the "**Trustee Reply**"); and the

Court being otherwise fully advised in the premises and based on the record presented including

the testimony and/or other evidence admitted, proffered, or adduced at the Sale Hearing and/or

the representations of counsel made on the record, finds good cause to grant the relief requested

in the Sale Motion as set forth herein;

### NOW, THEREFORE, IT IS HEREBY FOUND AND DETERMINED THAT:[2]

### Jurisdiction, Case Background, and Appointment of Trustee

A.     This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and

1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A, N, & O).

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact when appropriate. See Fed. R. Bankr. P. 7052. Statements made by the Court from the bench at the hearing
shall constitute additional conclusions of law and findings of fact as appropriate.

190698_2                              2

B.      The statutory predicates for the relief requested herein are Sections 101, 363, 365,
and 1113 of the United States Bankruptcy Code (the "**Code**") and Rules 2002, 6004, 6006 and
9006.

C.      On February 14, 2012 (the "**Petition Date**"), each of the debtors herein (the
"**Debtors**") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy
Code, 11 U.S.C. §§ 101 et seq. (the "**Code**"). From the Petition Date through April 11, 2012, the
Debtors remained in possession of their assets and continued to operate their businesses as
debtors in possession in accordance with 11 U.S.C. §§ 1107 and 1108 in the above-captioned
cases (the "**Chapter 11 Cases**").

D.      On April 12, 2012, this Court entered that certain Order [Dkt. No. 87] appointing
the Trustee as trustee for the Debtors, thereby taking the Debtors out of possession and placing
their assets and businesses under the control of the Trustee.

E.      There has been no committee of unsecured creditors appointed in the Chapter 11
Cases.

**The Debtors' Business**

F.      The Debtors own and operate a 58-unit (71 total occupancy) supportive living
facility located at 1221 South Edgewater, Morris, Illinois (the "**Facility**"). The Debtor, Morris
Real Estate Holdings II LLC ("**Morris Real Estate**"), originally purchased the Facility in 2007
and, upon information and belief, it began operations in 2009.

G.      Morris Real Estate entered into that certain Supportive Living Facility
Management Agreement dated as of December 27, 2007 (the "**SLF Agreement**"), with the other
Debtor, Morris Senior Living, LLC ("**SLF**"), whereby Morris Real Estate appointed the SLF as
the operating manager of the Facility.

H.      Currently, the Facility has about 62 residents, and the Debtors have approximately
45 full and part-time employees.

I.      The Trustee understands that many of the Debtors' current employees are subject
to the provisions of a Collective Bargaining Agreement covering the period 12/1/09 – 11/30/13
("**Collective Bargaining Agreement**") between Morris Real Estate and the American Federation
of State, County and Municipal Employees (AFSCME) Council 31, AFL-CIO, for and on behalf
of Local 3903 (the "**Union**").

190698_2                                    3

J.      Following his appointment, the Trustee sought and obtained Court authority to (a)
retain the undersigned counsel as his attorneys to assist him with the myriad of reporting and
other requirements and legal issues that have or may arise in these Chapter 11 Cases (see Court
Order entered on April 25, 2012, as Dkt No. 103), (b) retain Lois West and Popowcer Katten,
Ltd., as his accountants to assist him with the tax and forensic accounting services that have
arisen or may be required in these Chapter 11 Cases (see Court Order entered on September 6,
2012, as Dkt. No. 155), and (c) Martin Bukacek as the manager of the Debtors' Facility to handle
and manage the day to day operations of the Facility (see Court Order entered on June 6, 2012,
as Dkt. No. 132).

### The Claims in, and Financing During, These Chapter 11 Cases

K.      Prior to the filing of the Chapter 11 Cases, the Debtors defaulted under the terms
of various secured lending agreements with Northbrook Bank & Trust Company, successor to
First Chicago Bank and Trust (the "**Lender**"). The Lender sued the Debtors on December 30,
2011, in an Illinois State Court to collect such loans and to foreclose a mortgage against the
Facility. Approximately six weeks later, and just prior to the Lender's scheduled foreclosure sale
of the Debtors' personal property under the Illinois Uniform Commercial Code, these Chapter 11
Cases were filed.

L.      Following his appointment, the Trustee negotiated with the Lender for, and
obtained Court approval of, an Agreed Final Order Authorizing Chapter 11 Trustee's Use of
Cash Collateral and Granting Related Relief (Dkt. No. 133) on June 4, 2012, under which the
Lender agreed to allow the Trustee to use cash collateral, and if necessary, obtain post-petition
financing, in order to continue to operate the Facility (the "**Final Cash Collateral Order**").

M.      Pursuant to the terms of the Final Cash Collateral Order, the Trustee was given a
limited period of time to investigate the Lender's liens and claims in the Chapter 11 Cases.
Following the Trustee's investigation of the Lender's liens and claims, the Trustee reached a
settlement with the Lender, which settlement the Court approved pursuant to an order entered on
October 19, 2012 (Dkt. No. 161) ("**Settlement Order**"). Pursuant to the Settlement Order: (a)
the Lender holds an allowed prepetition claim against the Debtors, secured by first liens on
substantially all assets of the Debtors, including the Facility, in the amount of $9,350,314.82 (the
"**Allowed Lender Secured Claim**"); (b) the Allowed Lender Secured Claim consists of (i)
$1,185,869.82 which is liquidated, and (ii) $8,164,445 of which is unliquidated and pertains to

190698_2                                      4

an outstanding and, as of yet, undrawn Letter of Credit (the "**Letter of Credit**") issued by the Lender for the benefit of Morris Real Estate in connection with certain Multi-Family Housing SLF Revenue Bonds (the "**Bonds**") relating to the purchase and/or construction of the Facility. The Lender has asserted additional prepetition claims of in excess of $15 million secured by the Debtors' assets that arise from loans made to affiliates of the Debtors and certain cross-collateralization agreements entered into by the Debtors in 2010 (the "**Deferred Lender Claims**"). Under the Settlement Order, the resolution of the Deferred Lender Claims, however, has been tabled until after the consummation of the sale contemplated by this Motion.

N.       Pursuant to an order entered by the Court on August 7, 2012 (Dkt. No. 145), the Trustee established and served notice of a deadline of September 28, 2012, for any creditors to file pre-Petition Date claims in the Chapter 11 Cases ("**Claims Bar Date**"). Based on his initial review of all proof of claims filed by the Claims Bar Date and the Debtors' bankruptcy schedules, the Trustee believes there exists approximately 85 prepetition unsecured claims asserted in the Chapter 11 Cases in addition to the Lender's claims. Although the Debtors had asserted in their Bankruptcy Schedules that unsecured claims totaled about $170,000 in amount, the proof of claims filed in the Chapter 11 Cases assert several million dollars in unsecured claims. Since it is unclear yet whether there will be any distribution in these Chapter 11 Cases beyond that which may go to the Lender pursuant to its Allowed Lender Secured Claim, the Trustee has not yet begun an analysis of the validity and priority of the unsecured claims asserted in the Chapter 11 Cases.

### The Need For, And Initiation of, Sales Efforts in these Chapter 11 Cases

O.       Following his appointment, the Trustee determined that it was in the best interests of the Debtors' estates (the "**Estates**"), its creditors, the Debtors' employees, and the residents of the Facility, that the assets of the Estates be sold as a going concern pursuant to Court approval under section 363 of the Code. Throughout the Chapter 11 Cases, the Facility has been operating at or near full capacity, services to residents have not diminished, and the Debtors have been able to operate during these Chapter 11 Cases utilizing its cash collateral, although the Trustee did have a need to borrow approximately $195,000 in June 2012 from the Lender under the terms of the Final Cash Collateral Order to satisfy certain significant and pre-existing and unpaid real estate taxes, which Postpetition Advance remains unpaid. Nonetheless, the Trustee submits that (a) it is in the best interests of the Debtors' creditors that the Facility be sold as a going concern

190698_2                                    5

at this time while the Facility's operations continue at or near full capacity in order to maximize the value to the Estates, and (b) it is in the long-term best interest of the Debtors' residents, vendors and employees that a permanent new owner be found to own and operate the Facility. Indeed, the longer that the Facility remains in Chapter 11, (a) the greater the chances that its value and operations may be impaired due to the stigma that such a proceeding may have, and (b) the greater the costs will be to the Estates arising from the inherent nature of the proceeding – including such costs as fees incurred by court-approved professionals and the costs and fees incurred in connection with the numerous reporting and statutory requirements that must be satisfied in the Chapter 11 Cases.

P.      In consideration of the foregoing, beginning in approximately June 2012, the Trustee, with the consent and encouragement of the Lender, commenced marketing efforts to try to sell the Facility as a going concern. The Trustee obtained the names of: (a) virtually all of the owners or managers of every senior living center and nursing home in the State of Illinois from the website of the state agency that certifies and monitors such entities - the Illinois Department of Healthcare and Family Services (the "**IDHFS**"), and (b) several other potentially interested buyers from the Lender who had obtained such names in the course of its pre-Petition Date foreclosure sale efforts against the Debtors or its related affiliates operating similar types of entities. The Trustee then sent letters to and/or had other communications with such parties between June and September, 2012. In total, the Trustee communicated with over 100 parties regarding a potential sale.

Q.      During that period, the Trustee received responses from a total of 17 parties (the "**Prior Interested Parties**"), who signed confidentiality agreements with, and received due diligence information from, the Trustee, and/or conducted visits at the Facility. The Trustee and/or his counsel then contacted these interested parties and requested that offers be made within a specified time frame. Thereafter, the Trustee received 5 offers for the purchase of substantially all assets of the Estates. Following further communications with the offering parties, the Trustee, upon consultation with the Lender, then negotiated and selected, what he believed was the highest and best offer, from Morris Real Estate, LLC (the "**Stalking Horse**" or "**Buyer**") for a total cash price of $6,750,000.00 (the "**Stalking Horse Offer**"). The Stalking Horse Offer (a) allows for an auction at which competitive bidding may occur (the "**Auction**"), and (b) is memorialized by that certain Asset Purchase Agreement between the Trustee, on

behalf of the Debtors, and the Stalking Horse that was attached to the Sale Motion as exhibit A (the "**Stalking Horse APA**"). The form of the Stalking Horse APA, along with the Bidding Procedures, and Auction sale process were approved by the Court in the Sale Procedure Order entered on February 13, 2013 (Dkt. No. 210).

### Notice of Sale Motion, Auction, and Proposed Assumption/Assignment of Executory Contracts

R.    As evidenced by certificates of service and/or publication filed with the Court on February 5, 2013 (Dkt. No. 201), February 27, 2013 (Dkt. No. 213), and March 18, 2013 (Dkt. No. 237), proper, timely, adequate, and sufficient notice of, and reasonable opportunity to object or otherwise to be heard regarding the Sale Motion and the Auction has been provided by the Trustee by: (1) having served the Sale Motion on the office of the United States Trustee, counsel to the Lender, the Union, all entities reasonably known by the Trustee to have a Lien or other interest in the Sale Property to be sold and on all other parties of record in these Chapter 11 Cases; (2) having served the Sale Notice (as defined in the Sale Procedure Order, the "**Sale Notice**"), the Sale Procedure Order, and the Bidding Procedures to (i) all creditors of the Estates, (ii) all entities reasonably known by the Trustee to have a Lien or other interest in the Sale Property to be sold, (iii) all parties to any Executory Contracts (hereafter defined) of the Debtors which are being sought to be assumed and assigned and/or rejected in connection with the sale, (iv) counsel to the Lender; (v) the Office of the United States Trustee, (vi) the District Director of the Internal Revenue Service for the Northern District of Illinois, (vii) all taxing authorities identified in the Bankruptcy Schedules filed in these Chapter 11 Cases, (viii) all other entities that have filed requests for notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, (ix) the IDHFS, and (x) the Prior Interested Parties; (3) having published notice of the Auction in the auction mart of the Chicago Tribune on February 17, 2013, and February 20, 2013; and (4) having served the Assumption Notice on each non-debtor party to all Executory Contracts which the Trustee seeks to assume and assign to the Buyer under section 365 of the Code.

### Auction Sale Process

S.    The Trustee has adequately and appropriately marketed the Sale Property being sold to the Buyer under the APA.

190698_2                                          7

T.     At the Auction held on March 6, 2013, there was one Qualified Bid that was received from the Backup Bidder, and competitive bidding thereafter ensued, after which the Trustee accepted as the highest and best bid the offer of $7,190,000 from the Successful Bidder as the Successful Bid, and accepted as the next highest and best bid the offer of $7,185,000 from the Backup Bidder as the Backup Bid.

U.     The Trustee has complied in all respects and in good faith with the Sale Procedure Order, including, without limitation, by affording entities that wished to submit a Qualified Bid a full, fair, and reasonable opportunity to obtain necessary due diligence information and to submit the materials required under the Sale Procedure Order by the Qualified Bid Deadline.

V.     The Auction (i) was held as provided in the Bidding Procedures Order on March 6, 2013, (ii) was conducted pursuant to procedures established in good faith and in compliance with the Sale Procedure Order, and (iii) afforded a full, fair, and reasonable opportunity for any Qualified Bidder to make a higher or otherwise better offer for the Sale Property than that of the Stalking Horse set forth in the Stalking Horse Offer.

W.     The Trustee's determination that the APA constitutes the highest or otherwise best offer for the Sale Property is a valid and sound exercise of the Trustee's business judgment.

X.     The APA (i) represents the highest and otherwise best offer obtained for the Sale Property at the Auction, (ii) would not have been made by the Buyer absent the protections afforded to the Buyer by the Code and this Order, and (iii) represents a fair and reasonable agreement for the Buyer to purchase the Sale Property under the circumstances of these Chapter 11 Cases. Approval of the APA and the consummation of the transactions contemplated thereby are in the best interests of the Trustee, the Debtors, the Estates and its creditors, and the Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for entering into the APA prior to, and outside of, a plan of reorganization.

Y.     The Trustee has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby on behalf of the Debtors, and no further consents or approvals are required for the Trustee to consummate the transactions contemplated by the APA, except as otherwise set forth herein.

**Section 363 Sale**

Z.     The Buyer has offered to purchase the Sale Property free and clear of all liens, claims and interests including, without limitation, all Liens and Claims (as those terms are

190698_2                                    8

defined both in the APA and in sections 101(5) & (37) of the Code) (collectively, the "**Liens and Claims**"), but subject to only the Permitted Liens (as defined in the APA), (the Liens and Claims, excluding the Permitted Liens, shall be referred to herein as the "**Interests**"), to the full extent authorized under Code §363(f), with the same to attach to the net sale proceeds of this Asset Sale (the "**Sale Proceeds**") with the same validity and priority and to the same extent as existed before the Asset Sale. The Buyer would not enter into the APA other than through a sale of such Sale Property free and clear of all Interests.

AA.    The Trustee has satisfied the standards set forth in section 363(f) of the Code in order to sell all of the Sale Property free and clear of any Interests, and not selling the Sale Property free and clear of any Interests would adversely impact the Estates and would result in substantially less value to the Estates. Each entity with an Interest in any of the Sale Property to be transferred under the APA has (i) consented to, or is deemed to have consented to, the Asset Sale free and clear of such Interests, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest, or (iii) otherwise fall within the provisions of section 363(f) of the Code, and therefore, in each case, one or more of the standards set forth in section 363(f) of the Code has been satisfied as to all such Interests. Those holders of Interests who did not object, or who withdrew their objection(s), to the Sale Motion are deemed to have consented to entry of this Order pursuant to section 363(f)(2) of the Code. Therefore, approval of the APA and consummation of the Asset Sale at this time free and clear of Interests is appropriate pursuant to section 363(f) of the Code.

## Section 365 Assumption/Assignment of Executory Contracts

BB.    The APA requires that at the Closing (i) the Trustee shall assume and assign to the Buyer those certain executory contracts and unexpired leases between the Debtors and various other parties under section 365 of the Code, and (ii) the Buyer is to assume and pay the Cure Amounts associated therewith, all as more fully set forth on the list attached hereto as **Exhibit A** (the "**Executory Contracts**"). The Cure Amounts set forth on Exhibit A, or as otherwise agreed by the nondebtor party to the Executory Contracts and the Buyer, constitute all of the cure amounts that are required to be paid under section 365(b)(1) of the Code in connection with the assumption and assignment of the Executory Contracts. The Buyer would not enter into the APA other than through a sale or assignment of such Executory Contracts free and clear of all Interests.

190698_2                              9

CC.    The Trustee has demonstrated that it is a sound exercise of his business judgment
to assume and assign the Executory Contracts to the Buyer and that the assumption and
assignment of the Executory Contracts is in the best interest of the Debtors and their Estates.
The assumption and assignment at Closing of the Executory Contracts is subject to all of the
provisions of the APA. Each and every provision of the Executory Contracts or applicable non-
bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as
prohibiting, restricting, or conditioning, assignment of any of the Executory Contracts has been
satisfied or is unenforceable under section 365 of the Code.

DD.    At the Closing under the APA or as otherwise provided in the APA, or as soon as
practicable thereafter, the Cure Amounts set forth in Exhibit A hereto shall be paid, or adequate
assurance for their prompt payment shall be made, by the Buyer. The Buyer and/or the Trustee
has provided each of the counterparties to the Executory Contracts with adequate assurance of
future performance pursuant to section 365(f) of the Code. Upon assignment and sale to the
Buyer pursuant to the APA, the Executory Contracts shall be deemed valid and binding and in
full force and effect in accordance with their terms, subject to the provisions of this Order.

**Good Faith of Purchasers**

EE.    The Buyer is purchasing the Sale Property in good faith, is a good faith purchaser
within the meaning of 11 U.S.C. § 363(m), is entitled to the protection of that provision, and
otherwise has proceeded in good faith in all respects in connection with the APA in that: (i) the
Buyer recognized that the Trustee was free to deal with any other party interested in acquiring
the Sale Property; (ii) the negotiation and execution of the APA and any other agreements or
instruments related thereto were in good faith, at arms-length, and without collusion; and (iii) the
Trustee obtained the highest and best offer though the Auction sale process and prior marketing
efforts.

FF.    All relevant connections and relationships between the Debtors and the Buyer
have been disclosed in the APA. The Buyer is not an "insider" of the Debtors as that term is
defined in section 101(31) of the Code.

**Miscellaneous**

GG.    This Order constitutes a final and appealable order within the meaning of 28
U.S.C. §158(a). To any extent necessary under Rule 9014, this Court expressly finds that there

is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

**NOW, THEREFORE, IT HEREBY IS ORDERED THAT:**

1.    The Sale Motion is granted to the extent provided herein.

2.    All objections to the relief granted herein, including the Morris Real Estate Objection, to the extent not resolved or withdrawn, are hereby denied and overruled on the merits and/or for the reasons stated by the Court at the hearing on the Motion.

3.    The APA, including all of its terms and exhibits, and each of the transactions contemplated thereby, is approved.

4.    Pursuant to section 363 of the Code, the Trustee is authorized to sell the Sale Property to the Buyer free and clear of any and all Interests. Pursuant to sections 105(a) and 363(f) of the Code and the terms of the APA, the transfer of title to the Sale Property to the Buyer shall be free and clear of any Interests in or against the Sale Property, provided however, the Lender's Interests including, without limitation, the Allowed Lender Secured Claim and the Deferred Lender Claims shall attach to the Sale Proceeds with the same validity and priority and to the same extent as existed before the Asset Sale.

5.    The provisions of paragraph 4 shall be self-executing, and upon the consummation of the Closing under the APA, all Interests in the Sale Property shall, without further act, notice, deed or court order, hereby be deemed to be unconditionally, absolutely, irrevocably and forever released, discharged and terminated. In any event, if reasonably requested by the Buyer or the Trustee, any Interest holders, including Lender, are hereby directed to execute and deliver such documents and take such other action as may be reasonably necessary to release any and all Interests that each of them has or might have in and to the Sale Property.

6.    Pursuant to sections 105(a), 363 and 365 of the Code and the terms of the APA, the Trustee is hereby authorized and directed to (a) assume and assign and transfer to Buyer the Executory Contracts free and clear of all Interests, and (b) execute and deliver to Buyer such assignment documents as may be necessary to confirm such assignment and transfer. Pursuant to the terms of the APA, Buyer shall pay or otherwise satisfy the Cure Amounts at the Closing or as soon as practicable thereafter. Buyer has provided adequate assurance of its future performance of, and under, the Executory Contracts within the meaning of section 365(b)(1)(C)

190698_2                                    11

of the Code. Pursuant to section 365(k) of the Code, and except as otherwise provided in the APA, the Debtors and their Estates shall be relieved from any further liability with respect to the Executory Contracts after such assignment to, and assumption by, Buyer.

7.     Provided the Closing shall have occurred, and except as expressly permitted or otherwise specifically provided by the APA or this Order, pursuant to sections 105(a) and 363(f) of the Code, all persons and entities including, but not limited to, all governmental, tax and regulatory authorities, administrative agencies, customers, trade and other creditors and parties in interest, and their respective successors or assigns, holding Interests of any kind or nature whatsoever in or against the Debtors or the Sale Property, hereby are forever barred, estopped, and permanently enjoined from asserting against Buyer or the Sale Property, such person's or entity's Interests, pursuant to any legal or equitable theory whatsoever. For clarification, the term "Interests" in this Order shall include all Interests of Morris Healthcare & Rehabilitation Center, LLC ("**MHRC**"), including any Interests of MHRC arising out of or relating to any SLF Certificate (as that term is defined or used in the Morris Real Estate Objection).

8.     Except for the Assumed Liabilities or as expressly provided in the APA or this Order, the Buyer is not assuming, nor shall it, in any way whatsoever, be deemed to be liable or responsible, as successor or otherwise, for any liabilities of, or Interests against, the Debtors, by virtue of the conveyance of the Sale Property to the Buyer or the assumption and assignment to the Buyer of the Executory Contracts.

9.     This Order and the APA shall inure to the benefit of, and be binding on, the Debtors, the Estates, their creditors, the Buyer, the Backup Bidder, and their respective successors and assigns, any trustees, if any, subsequently appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases.

10.     The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

11.     The Trustee is hereby authorized and directed to take all such actions and execute any agreements that shall be reasonably necessary to consummate and give effect to the APA without further order of the Court.

12.     The APA and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court,

provided that: (i) any such amendment does not have a material adverse effect on the Debtors or the Estates, and (ii) notice of such amendment shall be provided to the Lender.

13.    This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all modifications thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the transaction.

14.    To the extent that any provisions of this Order are inconsistent with the provisions in the APA, any prior order, or any pleading with respect to motions in these cases, the terms of this Order shall control.

15.    Notwithstanding Rules 6004(h) and 6006(d), this Order shall be effective immediately upon entry and the Trustee is authorized to close the transactions contemplated by the APA immediately upon entry of this Order, subject to the terms of the APA.

16.    The transactions contemplated by the APA are undertaken by the Buyer in good faith, as that term is used in Section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization to consummate the Asset Sale and the transactions contemplated by the APA shall not affect the validity of the sale of the Sale Property to Buyer, unless such authorization is duly stayed pending such appeal.

17.    Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the Chapter 11 Cases, or in any subsequent or converted cases of the Debtors under chapter 7 or 11 of the Code, and nothing by virtue of any subsequent dismissal of these Chapter 11 Cases, shall alter, conflict with, or derogate from, the provisions of the APA or the terms of this Order.

18.    Except with respect to any distributions or payments permitted under the terms of this Order, the Sale Procedure Order, and the Final Cash Collateral Order, the Trustee shall retain the Sale Proceeds in an interest bearing account and will not otherwise disburse those funds except upon further order of this Court.

19.    In the event that the Asset Sale to Buyer fails to close because of a breach by Buyer or other failure of Buyer to perform its obligations under the APA or this Order, the Trustee is authorized, without the need to obtain further order of this Court, to substitute the

Backup Bidder as "Buyer" under this Order, with all of the terms of this Order to remain the same and to be binding upon, and inure to the benefit of, the Backup Bidder and (a) with all references herein to "Buyer" to be to the Backup Bidder, and (b) all references to "APA" to be to the Backup Bid.

**MAR 2 1 2013**

ENTER:

J. Cox   *Jacqueline P. Cox*

Honorable Jacqueline P. Cox
United States Bankruptcy Judge

*This order prepared by:*

BRAD A. BERISH, ESQ. (ARDC#06200891)
NATHAN Q. RUGG, ESQ. (ARDC #6272969)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for the Chapter 11 Trustee**

## List of Possible Contracts or Agreements -

The listing of certain agreements below is not an admission or assertion that such contract
or agreement may be enforceable against the "Debtors" or may be an "Executory Contract"
(as such quoted terms are defined in the attached Notice).

| | Column 1<br>Party to Contract | Column 2<br>Description | Column 3<br>Cure Amount | Column 4<br>Assume/Assign<br>or Reject |
|---|---|---|---|---|
| 17 | Morris Real Estate Holdings I LLC<br>999 Oakmont Plaza Drive<br>Suite 540<br>Westmont, IL 60559<br><br>Morris Real Estate Holdings I LLC<br>Attn: National Registered Agents, Inc.<br>200 West Adams Street<br>Chicago, IL 60606<br><br>Morris Real Estate Holdings I LLC<br>1223 Edgewater Drive<br>Morris, IL 60450<br><br>Copy to:<br>U.S. Department of Housing and Urban<br>Development<br>77 West Jackson Boulevard, 23rd Floor<br>Chicago, IL 60604<br>Attn: Carol Turner<br>   Project No. 071-43212 | Reciprocal Easement Agreement with<br>Morris Real Estate Holdings II LLC dated as<br>of 1/1/09 ("Easement Agreement") and<br>recorded with Grundy Illinois County<br>recorder on 1/23/09 as document no.<br>496603 | | |
| | | | $0.00 | Assume/Assign |

Case 12-05364    Doc 304    Filed 06/24/13    Entered 06/24/13 14:55:04    Desc Main
Case 12-05364    Doc 248    Filed 03/21/13    Entered 03/21/13 15:04:09    Desc Main
Document    Page 16 of 18
Case 12-05364    Doc 237    Filed 03/18/13    Entered 03/18/13 10:17:50    Desc Main
Document    Page 15 of 25
Case 12-05364    Doc 230    Filed 03/08/13    Entered 03/08/13 13:31:04    Desc Main
Document    Page 13 of 17

## List of Assumed Leases

This list is intended to include all resident leases of Morris Senior Living, LLC, that exist and are unexpired as of the Closing as defined in the attached Notice - including, without limitation, the following:

| Unit | Column 1<br>Party to Lease<br>Resident Name | Column 2<br>Description | Column 3<br>Cure Amount | Column 4<br>Assume/Assign<br>or Reject |
|---|---|---|---|---|
| 101 | Marschner, Charlotte | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 102 | Pfeifer, Geraldine | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 103 | Cassiday, Joan | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 104 | Riggs, Robert + Lucille | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 105 | Knutson, Robert & Miriam | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 106a | Kjellsvik, Arnold + Betty | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 107 | Vecellio, Jean | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 108 | Walker, Leonora | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 109 | Easton, Wanda | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 110 | Resler, Christian | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 111 | Current Resident | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 112 | Smith, Catherine | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 113 | Coop, Frances | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 114 | Flatness, Mildred | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 115 | Goodwin, Martha | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 116 | Griesemer, Janice | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 117 | Burkhart, Bruce & Clara | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 118 | Murphy, Josephine | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 119 | Wilmington, Arthur | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 120 | Current Resident | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 121 | Daily, Donald | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |

90156

EXHIBIT A

2

Case 12-05364 Doc 304 Filed 06/24/13 Entered 06/24/13 14:55:04 Desc Main

Case 12-05364 Doc 248 Filed 03/21/13 Entered 03/21/13 15:04:09 Desc Main
Document Page 17 of 18

Case 12-05364 Doc 237 Filed 03/18/13 Entered 03/18/13 10:17:50 Desc Main
Document Page 16 of 25

Case 12-05364 Doc 230 Filed 03/08/13 Entered 03/08/13 13:31:04 Desc Main
Document Page 14 of 17

| | Column 1<br>Party to Lease | Column 2<br>Description | Column 3<br>Cure Amount | Column 4<br>Assume/Assign<br>or Reject |
|---|---|---|---|---|
| 122 | Gonnam, Gwen | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 123 | Dolan, LaVelle | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 124 | Cannon, Muriel | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 125 | Heubach, Mary | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 201 | Carroll, Velva | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 202 | Eckert, Janice | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 203 | Shaw, Helen | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 204 | Johnson, Emily | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 205 | Englert, Shirley | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 206 | McIntyre, Gloria | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 207 | Sorensen, Marion | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 208 | Maland, Dolores | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 209 | Berkland, Le Roy | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 210 | Rice, Patricia | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 211/213 | Smith, Freda | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 212 | Bruce, Barbara (ANN) | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 214 | Harman, Esther | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 215 | Thompson, Donald | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 216 | Runestad, Martell | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 217 | Peters, Donald | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 218 | Decker, Arlene | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 219 | Clark, Betty | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 220 | Cameron, Dixie | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 221 | Panos, Joyce | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |

98158

EXHIBIT A

3

| | Column 1<br>Party to Lease | Column 2<br>Description | Column 3<br>Cure Amount | Column 4<br>Assume/Assign<br>or Reject |
|---|---|---|---|---|
| 222 | Haas, Dorothy | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 223 | Enrietta, Dorothy | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 224 | Talerico, Helen | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 225 | Page, Opal | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 226 | VanDuyne, Geraldine | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 227 | Canavan, Nancy | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 228 | Burch, Llewlyn | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 229 | Strickland, Fletcher | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 230 | Strong, Fredrick | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 231 | Rauchenecker, Norman | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 232 | Tyrrell, Lorraine | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |
| 233 | Hiles, Ruth | Resident Lease with Morris Senior Living, LLC | 0.00 | Assume/Assign |

98158

EXHIBIT A

4

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MORRIS SENIOR LIVING, LLC, et al., | ) | Case No. 13 C 2457 |
| | ) | |
| Debtors. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This is an appeal arising from a bankruptcy case involving debtors Morris Senior Living, LLC and Morris Real Estate Holdings II LLC. Morris Real Estate and two other parties, Morris Healthcare & Rehabilitation Center, Inc. and Lewis Borsellino, have appealed from the bankruptcy court's approval of the sale of all of the debtors' assets. This particular notice of appeal also included a separate contempt ruling the appeal of which presents issues separate and distinct from those involved in the appeal from the approval of the asset sale. In addition, there is a separately-filed appeal that concerns another contempt ruling (Case No. 13 C 2064). There was a significant need for dispatch in reviewing the order approving the sale but less need for dispatch in reviewing the two contempt findings. For this reason, the Court set separate briefing schedules for the sale appeal and the contempt appeals. This decision concerns only the sale appeal.

The Court imposed very short deadlines on the parties in briefing the sale appeal and on itself in ruling on it. The Court will therefore dispense with a detailed recitation of the facts and instead go directly to the disputed issues.

1.      Appellants Morris Healthcare and Borsellino did not object to the sale in the bankruptcy court.  They thus waived (or, better put, forfeited) any objection to the sale.  *See In re Cult Awareness Network, Inc.*, 151 F.3d 605, 610 (7th Cir. 1998) (party waived objection by failing to raise it before the bankruptcy court).  As a result, they are not proper appellants.

2.      The Court agrees with the bankruptcy court that Morris Real Estate lacks standing to appeal from the order approving the sale.  Though this is a Chapter 11 case, a trustee was appointed, and thus Morris Real Estate effectively is not a debtor in possession.  It has standing to appeal from the sale only if it has a pecuniary interest in the outcome.  *Cult Awareness Network*, 151 F.3d at 607; *In re Andreuccetti*, 975 F.2d 413, 416-17 (7th Cir. 1992).  That is so only if Morris Real Estate shows there is a reasonable possibility that there would be a surplus left over after all debts are satisfied.  *Cult Awareness Network*, 151 F.3d at 608; *Andreuccetti*, 975 F.2d at 417.

Morris Real Estate has not made the necessary showing.  The sale that the bankruptcy court approved will leave a significant amount of unpaid debt.  The only alternative on the table was a plan that the debtors proposed very late in the process.  But Morris Real Estate failed to show that its plan would leave a reversionary surplus after all debt was paid.  Indeed, it failed to show that the plan could succeed at all.

3.      In their briefs on appeal, appellants barely addressed either of the points just discussed.  They seem fixated on their contention that Morris Healthcare was wrongfully deprived, without due process, of a secured living facility (SLF) certificate issued by Illinois authorities.  That has little or nothing to do with the issues before the Court.  As the trustee (the appellee) points out, the SLF certificate is not being sold as

2

part of the court-approved sale.  Morris Healthcare's claim to the certificate does not

undermine the Court's conclusion that Morris Healthcare and Borsellino cannot appeal

because they forfeited any objection to the sale or its conclusion that Morris Real Estate

lacks standing because it has no pecuniary interest in the outcome.  The Court

therefore dismisses the appeal.

       4.     Even if there were a proper appellant before the Court, the Court still

would affirm the bankruptcy court's approval of the sale.  Approval of a sale of a

debtor's assets is reviewed for abuse of discretion, which occurs only if the bankruptcy

court based its decision on an incorrect legal principle or a clearly erroneous factual

finding, or when there is no evidence on which the court reasonably could have relied.

*See Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2003).

       Appellants have failed to make the showing required to overturn the bankruptcy

court's order.  The bankruptcy court considered the appropriate factors and reasonably

found a business justification for the sale, and it committed no clear error.  *See Fulton*

*State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991).  The trustee acted in a

procedurally adequate matter in marketing the sale and providing notice to all parties in

interest; there was significant bidding and negotiation, done at arm's length; and there is

no indication of any improper motive or bad faith on the part of the trustee or the

purchaser.  In addition, the sale was commercially reasonable given the dire financial

situation that the trustee faced when he took over operation of the business.  In

addition, there was no reasonable expectation that any other alternative – including

Morris Real Estate's proposed plan – would succeed.  That proposed plan turned on

obtaining a government-backed loan, but Morris Real Estate did not show there was a

reasonable possibility that it would actually obtain the loan.  The bankruptcy court thus reasonably concluded that the proposed plan was not viable.

### Conclusion

For the foregoing reasons, the Court directs the Clerk to enter judgment dismissing the appellants' appeal from the bankruptcy court's order approving the sale of the debtors' assets.  Because the appeal from the sale order is distinct from the contempt matter also being appealed under this case number, this will be a final judgment, roughly equivalent to a final judgment on less than all claims entered pursuant to Federal Rule of Civil Procedure 54(b).  The case will, however, remain open pending determination of the contempt appeal that is being separately briefed.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  May 9, 2013

4